# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 5, 2014 Session

## FLETCHER WHALEY LONG v. BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE

**Direct Appeal from the Chancery Court for Montgomery County**
**No. MCCHCVMG1216      Don R. Ash, Senior Judge**

_____

**No. M2013-01042-SC-R3-BP - Filed June 4, 2014**

_____

A Hearing Panel of the Board of Professional Responsibility determined that an attorney had violated multiple disciplinary rules and imposed a public censure. The attorney appealed, and the trial court affirmed the Hearing Panel's decision. On appeal to this Court, the attorney raises a number of issues, including a facial constitutional challenge to Tenn. Sup. Ct. R. 9. After reviewing the evidence and the applicable law, we reject the attorney's constitutional challenge to Tenn. Sup. Ct. R. 9, and we conclude that his other issues are without merit. We therefore affirm the judgment of the trial court.

**Appeal Pursuant to Tenn. Sup. Ct. R. 9, § 1.3; Judgment of the Chancery Court Affirmed**

SHARON G. LEE, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., and JANICE M. HOLDER, CORNELIA A. CLARK, and WILLIAM C. KOCH, JR., JJ., joined.

John Edward Herbison, Clarksville, Tennessee, for the appellant, Fletcher Whaley Long.

Krisann Hodges, Brentwood, Tennessee, for the appellee, Board of Professional Responsibility of the Supreme Court of Tennessee.

### OPINION

### I. PROCEEDINGS BELOW

On August 29, 2011, the Board of Professional Responsibility ("the Board") filed a Petition for Discipline against Fletcher Whaley Long, who was licensed to practice law in Tennessee in 1997. The Board alleged that Mr. Long committed professional misconduct during his representation of Lawrence Earl Ralph. On May 22 and May 23, 2012, a hearing panel ("the Panel"), appointed by the Board pursuant to Tennessee Supreme Court Rule 9,

section 8.2, heard evidence in the case. On May 30, 2012, the Panel issued its decision finding that Mr. Long had violated Tennessee Supreme Court Rule 8, RPCs 1.4(a), 1.15(a), 1.16(d)(5) and 8.4(a), and imposed a public censure.[1]

Pursuant to Tennessee Supreme Court Rule 9, section 1.3, Mr. Long appealed the Panel's decision to the Montgomery County Chancery Court ("the Trial Court"). On March 27, 2013, the Trial Court, based on the transcript and the record of the Panel's proceeding, affirmed the Panel's findings and recommendations. Mr. Long appeals the decision of the Trial Court.

## II. STANDARD OF REVIEW

The Supreme Court of Tennessee is the source of authority of the Board of Professional Responsibility and all its functions. *Brown v. Bd. of Prof'l Responsibility*, 29 S.W.3d 445, 449 (Tenn. 2000). As a part of our duty to regulate the practice of law in Tennessee, we bear ultimate responsibility for enforcing the rules governing our profession. *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 469-70 (Tenn. 2003). We review judgments under our "inherent power [and] essential and fundamental right to . . . administer [the] rules pertaining to the licensing . . . of attorneys." *Hughes v. Bd. of Prof'l Responsibility*, 259 S.W.3d 631, 640 (Tenn. 2008) (citing *In re Burson*, 909 S.W.2d 768, 773 (Tenn. 1995)).

When reviewing a hearing panel's judgment, a trial court must consider the transcript of the evidence before the hearing panel and its findings and judgment. Tenn. Sup. Ct. R. 9, § 1.3. On questions of fact, the trial court does not substitute its judgment for that of the hearing panel as to the weight of the evidence. *Bd. of Prof'l Responsibility v. Allison*, 284 S.W.3d 316, 323 (Tenn. 2009) (citing *Bd. of Prof'l Responsibility v. Love*, 256 S.W.3d 644, 653 (Tenn. 2008)). Any reversal or modification of a hearing panel's decision must be based on the reviewing court's finding that the hearing panel's decision was:

> (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted

---

[1] The petition for discipline alleged that Mr. Long violated RPCs 1.4(a), 1.15(a), 1.16(d)(5), and 8.4(a) as they existed at the time of the alleged misconduct. We note that the Panel's legal conclusions cite current RPC 1.4(a)(4) and quote a portion of current RPC 1.16(d)(6). Because the rules, as written at the time of the alleged misconduct, are not substantively different from their current versions, our analysis is not affected by the Panel's erroneous references to those current rules.

exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn. Sup. Ct. R. 9, § 1.3; *Love*, 256 S.W.3d at 653. Our standard of review on appeal is the same as that of the trial court. *Hoover v. Bd. of Prof'l Responsibility*, 395 S.W.3d 95, 103 (Tenn. 2012).

### III. SUMMARY OF FACTS

We begin our review with a summary of the evidence presented to the Panel and reviewed by the Trial Court.

On May 14, 2003, Mr. Ralph was incarcerated in the Warren County jail after being convicted of three misdemeanors and sentenced to serve time in jail. On May 19, 2003, Mr. Ralph's brother, David Ferrell, contacted Mr. Long and asked him to represent Mr. Ralph. On May 20, 2003, Mr. Long and his assistant, Theresa Eatherly, drove to McMinnville to meet Mr. Ferrell. Mr. Long and Mr. Ferrell met in front of the Warren County courthouse, where Mr. Ferrell paid Mr. Long $7500 in cash. Mr. Long handwrote a fee agreement, which stated only the following:

> Deposit of 7,500
> escrow account
> Draw out as earned
> 200/hour

After Mr. Long and Mr. Ferrell signed the agreement, Mr. Long met with the trial judge and the assistant district attorney general. After the conference, the trial judge set an appeal bond for Mr. Ralph's release. Mr. Long left the courthouse and met Mr. Ferrell in the parking lot. Mr. Ferrell was pleased that Mr. Long had been successful in securing an appeal bond.

As to the status of Mr. Long's attorney fee, Mr. Long testified that he asked Mr. Ferrell if he agreed that Mr. Long had earned the $7500 fee and that Mr. Ferrell answered: "Yes, sir, I would agree with that." Mr. Long further testified that Mr. Ferrell said it was "okay with him" if Mr. Long treated the $7500 as an earned fee. Mr. Ferrell denied that he ever agreed to modify the written fee agreement, and he testified that he expected Mr. Long would deposit the $7500 into his trust account and draw it out at a rate of $200 per hour. While driving back to Nashville, Mr. Long expressed concern to Ms. Eatherly that he had not "g[otten] a piece of paper back," but told her that "Mr. Ferrell would lose it in a few days anyways." Mr. Long did not deposit the $7500 fee into his trust account.

Following Mr. Ralph's release from jail, Mr. Long filed a motion for a new trial and also agreed to represent Mr. Ralph in a second criminal case. For Mr. Ralph's second criminal case, Mr. Ferrell testified that he paid $5700 to attorney Greg Clayton[2] and $300 to Mr. Long. Mr. Long testified that he did not charge any additional fees to represent Mr. Ralph in the second case. Mr. Clayton and Mr. Long tried Mr. Ralph's case before a jury, and Mr. Ralph was convicted. Following the conviction, Mr. Ralph and Mr. Ferrell met with Mr. Long and Mr. Clayton and terminated their services. Mr. Ferrell asked Mr. Long to provide an accounting of the attorney's fees charged and to refund any fees that were unearned. Mr. Long did not provide an accounting and did not refund any fees.[3]

## IV. Hearing Panel's Ruling

Based on these facts, the Panel found that Mr. Long violated RPC 1.4(a) because he failed to provide an accounting of the fees that he had charged in connection with Mr. Ralph's representation; violated RPC 1.15(a) because he failed to deposit the $7500 fee into his trust account; violated RPC 1.16(d)(5) because he failed to refund unearned fees; and violated RPC 8.4(a) by failing to adhere to RPCs 1.4(a), 1.15(a), and 1.16(d)(5).[4] The Panel determined that a public censure was the appropriate sanction for Mr. Long's misconduct.

---

[2] At the time, Mr. Long and Mr. Clayton (who is now deceased) practiced together as an association of attorneys.

[3] Mr. Ferrell filed a civil suit against Mr. Long seeking a refund of the $7500 fee that he had paid Mr. Long on his brother's behalf. *See Ferrell v. Long*, No. M2008-02232-COA-R3-CV, 2009 WL 1362321 (Tenn. Ct. App. May 14, 2009), *perm. app. denied* (Tenn. Nov. 23, 2009). The trial court dismissed Mr. Ferrell's lawsuit with prejudice on the ground that the statute of limitations had expired. Mr. Ferrell appealed the dismissal, which the Court of Appeals affirmed. *Id.*

[4] At the time of the alleged misconduct, these rules stated as follows:

RPC 1.4(a): "A lawyer shall keep a client reasonably informed about the status of a matter and comply with reasonable requests for information within a reasonable time."

RPC 1.15(a): "A lawyer shall hold property and funds of clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own property and funds."

RPC 1.16(d)(5): "Upon termination of the representation of a client, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, including: . . . promptly refunding any advance payment for fees that have not been earned."

RPC 8.4(a): "It is professional misconduct for a lawyer to . . . violate or attempt to violate the Rules of Professional Conduct[.]"

## V. ISSUES RAISED BY MR. LONG

In this appeal, Mr. Long argues that: (1) the Panel's decision was arbitrary or capricious, or characterized by an abuse or clearly unwarranted exercise of discretion; (2) the Panel's decision was unsupported by substantial and material evidence in light of the entire record; (3) the charges against Mr. Long are barred by the doctrine of laches; (4) the charges against Mr. Long are barred by the doctrine of res judicata; and (5) Rule 9 is unconstitutional and violates Mr. Long's due process rights because it combines investigative, enforcement, and adjudicative functions in the Board, creates a financial incentive for the Board to pursue formal disciplinary proceedings, and gives rise to an institutional bias in favor of finding guilt and imposing discipline. We have thoroughly considered Mr. Long's arguments and find that each lacks merit.

## VI. ANALYSIS

### A. Public Censure vs. Private Discipline

Mr. Long argues that the Panel acted arbitrarily or capriciously or upon an unlawful procedure because the Panel should have issued a form of private discipline instead of a public censure. Mr. Long notes that at the time of his alleged misconduct, Tennessee Supreme Court Rule 9 permitted a hearing panel to impose a private reprimand. Disciplinary Counsel agrees that the Panel could have considered a private reprimand but argues that Mr. Long has failed to demonstrate that the Panel acted arbitrarily or capriciously or upon an unlawful procedure by imposing a public censure.

Mr. Long argued to the Panel that if any discipline was warranted, he should receive a private sanction rather than a public one. He cites nothing in the record to indicate that the Panel did not consider his argument. Additionally, although the Panel did not specifically reference the applicable American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards") in its written Order imposing a public censure, the Panel's Order makes clear that ABA Standards 4.13, 4.43, and 7.3[5]—each of which recommends a presumptive

---

[5] ABA Standard 4.13: "Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client."

ABA Standard 4.43: "Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client."

ABA Standard 7.3: "Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public,
(continued...)

penalty of a public censure—applied to Mr. Long's misconduct. Accordingly, we conclude that the Panel's decision to impose a public censure was neither arbitrary nor capricious, nor based on an unlawful procedure.

## B. Substantial and Material Evidence

Mr. Long further argues that the Panel's decision was not supported by substantial and material evidence in light of the entire record. Specifically, Mr. Long contests the Panel's finding that his written fee agreement with Mr. Ferrell was not orally modified, and as a result, he argues that the Panel erred in finding that he violated RPC 1.15(a). Additionally, although Mr. Long admits that he violated RPC 1.4(a) by failing to provide an itemized bill or accounting of the fees charged to Mr. Ferrell, Mr. Long contends that such failure was *de minimis* because it "is certainly understandable that an attorney in a flat fee case may not keep detailed time records." Further, Mr. Long contests the Panel's finding that he violated RPC 1.16(d)(5) by failing to refund unearned fees to Mr. Ferrell, because he was entitled to treat the $7500 fee as an earned flat fee.

Upon our review of the record, we hold that the Panel's findings that Mr. Long violated RPCs 1.15(a), 1.4(a) and 1.16(d)(5) are supported by substantial and material evidence. Mr. Long and Mr. Ferrell gave conflicting testimony on the crucial issue supporting each of these violations: whether the written fee agreement between Mr. Long and Mr. Ferrell was subsequently modified by an oral agreement that permitted Mr. Long to treat the $7500 fee as an earned fee. After considering the conflicting testimony, the Panel accredited Mr. Ferrell's version of events, and the Panel was within its discretion to do so.

Mr. Long essentially asks us to re-weigh the evidence and to substitute our judgment for that of the Panel and the Trial Court. This we cannot do. A hearing panel "is uniquely suited to make credibility determinations of witnesses." *Culp v. Bd. of Prof'l Responsibility*, 407 S.W.3d 201, 208 (Tenn. 2013). Accordingly, we must defer to the Panel's determination that Mr. Long's version of the events was not credible. In addition to Mr. Ferrell's testimony, the Panel's finding that the written agreement was not orally modified is supported by two reasonable inferences made by the Panel. First, the Panel found that Mr. Long told Ms. Eatherly during their return trip to Nashville on May 20, 2003, that he should have gotten the "paper" back from Mr. Ferrell, but that he was not unduly concerned because Mr. Ferrell would "lose it in a few days anyways." The Panel reasonably inferred that Mr. Long's statements reflected that Mr. Long did not believe that the agreement had been modified. Second, the Panel found that Mr. Long's testimony that he did not charge any

---

[5](...continued)
or the legal system."

additional fees to represent Mr. Ralph in his second case was not credible. The Panel inferred that Mr. Long's failure to charge any additional fees reflected his belief that the original fee agreement had not been modified. This, too, was a reasonable inference which we must accept on appeal. The evidence supports the Panel's finding that the written fee agreement between Mr. Ferrell and Mr. Long was not orally modified. Accordingly, there is substantial and material evidence supporting the Panel's finding that Mr. Long violated RPCs 1.4(a), 1.15(a), 1.16(d)(5), and 8.4(a).

## C. Laches

In his third issue, Mr. Long argues that the disciplinary charges are barred by the doctrine of laches. He asserts that his alleged misconduct occurred six years before the Board started the disciplinary investigation and nine years before the Panel hearing. He contends there was no valid reason for the delay. Under the defense of laches, "equity will not intervene on behalf of one who has delayed unreasonably in pursuing his rights." *Dennis Joslin Co. v. Johnson*, 138 S.W.3d 197, 200 (Tenn. Ct. App. 2003). Laches, if applicable, requires more than mere delay. It requires an unreasonable delay that prejudices the party seeking to employ laches as a defense, and it depends on the facts and circumstances of each individual case. *See Jansen v. Clayton*, 816 S.W.2d 49, 51 (Tenn. Ct. App. 1991) (explaining that the equitable defense of laches "involves an inexcusably long delay coupled with injury to the rights of another resulting from the delay").

The doctrine of laches does not apply in our attorney disciplinary proceedings.[6] The Board is an agency of the Judicial Department of Tennessee, and "laches is not imputable to the government[.]" *State ex rel. Crist v. Bomar*, 365 S.W.2d 295, 297-98 (Tenn.

---

[6] A number of other jurisdictions have considered whether the equitable defense of laches applies in attorney disciplinary cases. *See, e.g.*, *In re Tenenbaum*, 918 A.2d 1109, 1114 (Del. 2007) (adopting the laches defense in attorney disciplinary cases); *In re Ponds*, 888 A.2d 234, 240-44 (D.C. 2005) (discussing delay as a mitigating factor in setting the appropriate sanction); *In re Geisler*, 614 N.E.2d 939, 940 (Ind. 1993) (collecting cases and finding no occasion to determine whether laches applies in attorney disciplinary cases); *In re Matney*, 740 P.2d 598, 605 (Kan. 1987) (applying laches in an attorney disciplinary case); *Attorney Grievance Comm'n of Md. v. Penn*, 65 A.3d 125, 135 (Md. 2013) (rejecting laches defense in the absence of showing of prejudice); *In re Weinstein*, 459 P.2d 548, 549 (Or. 1969) (finding no occasion to apply laches in an attorney disciplinary case) ("*Weinstein*"); *In re McCarty*, 75 A.3d 589, 594 n.3 (Vt. 2013) (applying laches but finding no prejudice); *Comm. on Legal Ethics v. Pence*, 240 S.E.2d 668, 672 (W. Va. 1977) (observing that "[n]o court which has considered the laches question, as far as we can determine, has dismissed a disciplinary proceeding against an attorney on the ground of laches"). *See generally*, Debra T. Landis, Annotation, *Attorneys at Law: Delay in Prosecution of Disciplinary Proceeding as Defense or Mitigating Circumstance*, 93 A.L.R.3d 1057 (1979).

1963).[7] Moreover, the primary purpose of attorney disciplinary proceedings is to protect the public from attorneys who do not comply with the Rules of Professional Responsibility. The public's interest is not well served by the dismissal of a disciplinary proceeding because of a delay in prosecution. *Weinstein*, 459 P.2d at 549; *see also Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 618 (Tenn. 2010) (noting that the respondent's "intentional disregard of the ethical rules undermines the protection of the public and the preservation of the public's confidence in the legal system"); *ABA Standards for Imposing Lawyer Sanctions* § 1.1 (providing that the "purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession"). Because the doctrine of laches is inapplicable to attorney disciplinary proceedings, Mr. Long's assertion that his disciplinary charges are barred under this doctrine is without merit.

## D. Res Judicata

Next, Mr. Long argues that the charges against him are barred by the doctrine of res judicata. Mr. Long contends that he previously agreed to a public censure on June 22, 2009, in a separate case brought against him by the Board involving six different complaints of misconduct. He further contends that the parties in that separate case were represented by the same counsel. However, Mr. Long's argument fails because the previous complaints that the Board brought against him related to different clients and concerned different allegations of misconduct.

The doctrine of res judicata, or claim preclusion, bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit. *Creech v. Addington*, 281 S.W.3d 363, 376 (Tenn. 2009); *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995) (quoting *Goeke v. Woods*, 777 S.W.2d 347, 349 (Tenn. 1989)). It is a "rule of rest," *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976), and it promotes finality in litigation, prevents inconsistent or contradictory judgments, conserves judicial resources, and protects litigants

---

[7] The Court of Appeals previously applied the doctrine of laches in *Tennessee Bar Ass'n v. Berke*, 344 S.W.2d 567, 571 (Tenn. Ct. App. 1960), but *Berke* is distinguishable because it was a statutory disciplinary proceeding brought by the Tennessee Bar Association, before the establishment of the current disciplinary system under Rule 9. Even had laches applied, the delay between the time of the misconduct and the initiation of a disciplinary investigation in 2009 was not attributable to the Board. The Board learned about Mr. Long's possible misconduct when the Court of Appeals released its opinion in *Ferrell v. Long*, 2009 WL 1362321, on May 14, 2009. The Board's Office of Disciplinary Counsel, acting on its own initiative, opened an investigation into Mr. Long's misconduct less than a week after the release of *Ferrell v. Long*. The delay was not unreasonable, and Mr. Long failed to show any specific prejudice that resulted from the delay.

from the cost and vexation of multiple lawsuits. *In re Estate of Boote*, 198 S.W.3d 699, 718 (Tenn. Ct. App. 2005); *Sweatt v. Tenn. Dep't of Corr.*, 88 S.W.3d 567, 570 (Tenn. Ct. App. 2002).

The party asserting a defense predicated on res judicata must demonstrate (1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits. *Lien v. Couch*, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998); *Lee v. Hall*, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990). A trial court's decision that a claim is barred by the doctrine of res judicata involves a question of law which will be reviewed de novo on appeal without a presumption of correctness. *Jackson v. Smith*, 387 S.W.3d 486, 491-92 (Tenn. 2012); *In re Estate of Boote*, 198 S.W.3d at 719. The complaints against Mr. Long are not barred by res judicata because there has been no earlier decision against Mr. Long on the same cause of action. As the Panel correctly noted, "the previous disciplinary action against Mr. Long related to wholly separate allegations of misconduct," and it involved separate and distinct facts. Accordingly, this argument is without merit.

### E.  Constitutional Challenge to Tenn. Sup. Ct. R. 9

Finally, Mr. Long argues that Rule 9 is unconstitutional and violates his due process rights because Rule 9 combines investigative, enforcement, and adjudicative authority in the same agency; creates a financial incentive for the Board to pursue formal disciplinary proceedings; and gives rise to an institutional bias in favor of finding guilt and imposing discipline. Before addressing Mr. Long's constitutional challenges to Rule 9, we must address two preliminary issues.

### 1.  Applicability of Tenn. R. Civ. P. 24.04

The Panel declined to address Mr. Long's constitutional challenge to Rule 9 on the merits because Mr. Long had not given the Attorney General notice of his facial constitutional challenge based on Tenn. R. Civ. P. 24.04. The Trial Court did not address the Panel's ruling that Mr. Long had waived his constitutional issues for failing to comply with Tenn. R. Civ. P. 24.04. Instead, the Trial Court ruled that Mr. Long had "failed to demonstrate that Tenn. Sup. Ct. R. 9 is unconstitutional in any respect."

Rule 24.04 of the Rules of Civil Procedure provides:

When the validity of a statute . . . or an administrative rule . . . of this state is drawn in question in any action to which the state or an officer or agency is not

a party, the court shall require that notice be given the Attorney General, specifying the pertinent statute, rule or regulation.

By its terms, Rule 24.04 applies "in any action to which the state or an officer or agency is not a party." As a self-sustaining entity established by this Court, the Board is a state agency. *See* Tenn. Code Ann. § 8-23-207 (2011) (providing in part that "any self-sustaining board, commission or agency created by the supreme court of Tennessee shall be deemed a state agency and all employees of such boards, commissions or agencies shall be deemed state employees and entitled to the same rights and benefits enjoyed by other state employees"). The Board, through the Office of Chief Disciplinary Counsel, was the petitioner in the disciplinary proceeding. Because the Board is a state agency and a party in attorney disciplinary proceedings brought under Rule 9, Rule 24.04 is inapplicable in such proceedings. Thus, the Panel erred in ruling that Mr. Long was required to give notice to the Attorney General of his facial constitutional challenge to Rule 9. However, for the jurisdictional reason discussed below, that error is immaterial.

### 2. Jurisdiction to Consider Facial Challenges to Court Rules

Under Tennessee law, only the Tennessee Supreme Court may determine the facial validity of its rules. *Barger v. Brock*, 535 S.W.2d 337, 342 (Tenn. 1976); *see also Petition of Tenn. Bar Ass'n*, 539 S.W.2d 805, 807 (Tenn. 1976) (stating that "no other Court in Tennessee has jurisdiction to review and change or void any Rule promulgated by this Court"). Mr. Long asserted before the Panel and the Trial Court that Rule 9 was unconstitutional on its face. However, under *Barger* and *Petition of Tennessee Bar Ass'n*, neither the Panel nor the Trial Court had jurisdiction to decide Mr. Long's facial constitutional challenge.[8]

---

[8] To be clear, we are faced here with a *facial* challenge to a rule promulgated by the Supreme Court, over which trial courts (and, by inference, hearing panels) have no jurisdiction. As a general rule, however, Tennessee law permits administrative agencies to rule on *as-applied* constitutional challenges raised in hearings before those agencies. *Richardson*, 913 S.W.2d at 455 (stating that "administrative agencies have no authority to determine the facial constitutionality of a statute. They are authorized, however, to determine the constitutionality of the application of statutes or rules and of the procedures employed"). *Richardson* pertains to agencies governed by the Uniform Administrative Procedures Act, Tenn. Code Ann. §§ 4-5-101 to -404 (2011 & Supp. 2013), which does not apply to attorney disciplinary proceedings under Rule 9. The standard of review in Rule 9 allows a trial court to reverse or modify a hearing panel's decision "if the rights of the petitioner have been prejudiced because the panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions. . . ." Tenn. Sup. Ct. R. 9, § 1.3. The question of whether hearing panels may rule on as-applied challenges is not before us in this case, and we therefore do not decide that issue.

There are two ways to challenge the facial validity of Supreme Court rules. The first is to file a petition directly with this Court. As the Court stated in *Barger*:

> When any individual deems any Rule of Court to be objectionable from any standpoint, it is his [or her] privilege to petition the Court for its elimination or modification. Indeed, it is the duty of the solicitors at the Bar of this Court to make suggestions and recommendations on the orderly administration of the appellate judicial process.

*Barger*, 535 S.W.2d at 342. The Court treated the pleadings in *Barger* as constituting a motion to vacate or modify Rule 42 and addressed the facial challenge to the rule. *Id*.

The second way to raise a facial constitutional challenge is to assert it in an appeal to this Court. *See, e.g.*, *Moncier v. Bd. of Prof'l Responsibility*, 406 S.W.3d 139, 151-53 (Tenn. 2013) (addressing a void-for-vagueness challenge to Rule 9, § 24.3, among other issues raised in the appeal of a hearing panel's decision on a petition for relief from costs); *cf. Richardson*, 913 S.W.2d at 456-57 (discussing the procedure for raising facial constitutional challenges in proceedings governed by the Administrative Procedures Act).

Mr. Long pursued this second method by raising his facial constitutional challenge to Rule 9 as one of a number of issues before the Panel. We, therefore, will address Mr. Long's constitutional challenge to Rule 9, even though the Panel and the Trial Court lacked the authority to rule on the issue below.

### 3. Constitutional Challenges

Mr. Long asserts three separate arguments in his constitutional challenge to Rule 9. He contends that Rule 9 is unconstitutional and violates his due process rights because: (1) it combines investigative, enforcement, and adjudicatory authority in the same judicial agency; (2) it creates a financial incentive for the Board to pursue formal disciplinary proceedings; and (3) it gives rise to an institutional bias in favor of finding guilt and imposing discipline, because the Board derives income from costs only in the event that there is a finding of misconduct. We will address each of these issues in turn.

First, Mr. Long argues that Rule 9 is unconstitutional because it combines investigative, enforcement, and adjudicative functions in the Board. Pointing to general due process principles, Mr. Long argues that due process means "fundamental fairness and substantial justice," *State v. White*, 362 S.W.3d 559, 566 (Tenn. 2012), and that in a disciplinary proceeding, an attorney "is entitled to procedural due process." *In re Ruffalo*, 390 U.S. 544, 550 (1968). Mr. Long submits that the combining of investigative,

enforcement, and adjudicative functions within the Board inherently denies him the right to a fair trial before an impartial tribunal. This, Mr. Long contends, is a structural constitutional error, requiring automatic reversal.

Although Mr. Long cites a number of cases setting out general due process principles, he cites no case holding that a particular jurisdiction's attorney disciplinary system is unconstitutional on the ground that investigatory, enforcement, and adjudicative functions are combined in a single agency. Our own research indicates that Mr. Long's argument is without merit.

We previously addressed the combination of investigatory, enforcement, and adjudicative functions in the context of school disciplinary proceedings in *Heyne v. Metro. Nashville Board of Public Education*, 380 S.W.3d 715, 735 (Tenn. 2012), and found that the merging of these functions comports with due process. As we explained:

> Due process does not require all the structural safeguards in administrative and civil adjudicatory proceedings that we have come to expect in criminal proceedings. Accordingly, while the separation of investigative, prosecutorial, and adjudicative functions is a hallmark of criminal proceedings, due process does not require the strict adherence to separation of functions in civil matters. [Thus], some combination of overlapping of functions in an administrative proceeding is not inconsistent with fundamental fairness.

*Id.* (citations omitted).

We also have addressed this issue, albeit tangentially, in an attorney disciplinary proceeding. In *Moncier*, we considered whether members of a hearing panel should have recused themselves on the ground of alleged bias due to the combination of investigative and adjudicative functions in the Board. As we wrote:

> When an assertion of bias is premised solely on an administrative adjudicator's exercise of both investigative and adjudicative functions, the party making the contention must show that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented. Any form of function combination, occurring alone

and without other exacerbating biasing influences, is very unlikely to run afoul
of procedural due process.

*Moncier*, 406 S.W.3d at 161 (citations and internal quotation marks omitted).

We find the principles from *Heyne* and *Moncier* persuasive. Attorney disciplinary proceedings are not criminal proceedings, and to prove a risk of bias that would give rise to a due process violation, a litigant must point to more than a simple combination of functions within the Board.

Appellate courts in other jurisdictions have squarely rejected claims that the combination of investigatory, enforcement, and adjudicative functions in a single attorney disciplinary agency (or judicial disciplinary agency) violates due process principles. *See, e.g.*, *In re Hanson*, 532 P.2d 303, 306 (Alaska 1975) (stating that the "combination of judicial and investigative functions in the Commission [on Judicial Qualifications] did not violate petitioner's due process rights under eigher [sic] the federal constitution or Alaska's constitution"); *People v. Varallo*, 913 P.2d 1, 4 (Colo. 1996) (holding that "[t]he fact that the members of the grievance committee and the disciplinary counsel are appointed by the supreme court is not enough by itself to establish a per se violation of due process"); *In re Zoarski*, 632 A.2d 1114, 1121 (Conn. 1993) (holding that the combination of investigatory and adjudicatory functions in one judicial disciplinary agency does not violate due process); *In re Baun*, 232 N.W.2d 621, 623-24 (Mich. 1975) (holding that Michigan's lawyer disciplinary proceedings do not violate due process, because the functions of investigation, prosecution, adjudication, and review are "functionally separate" and are handled by different individuals); *Goldstein v. Comm'n on Practice of Supreme Court*, 995 P.2d 923, 928 (Mont. 2000) (rejecting claim that Montana's attorney disciplinary system violated due process principles because investigatory and enforcement authority were combined in one agency). *But see Tweedy v. Okla. Bar Ass'n*, 624 P.2d 1049, 1054-55 (Okla. 1981) (holding that the Oklahoma Supreme Court, under due process principles, could not order the reinvestigation of an attorney disciplinary grievance but also noting that the Board of Governors of the state bar could review the matter).

In Tennessee's attorney disciplinary system, the investigatory, enforcement, and adjudicative functions fall under the purview of the Board. Importantly, however, those separate functions are performed by different groups of individuals within the Board. The Board's Office of Chief Disciplinary Counsel investigates allegations of misconduct by Tennessee attorneys and then, when warranted, initiates formal disciplinary proceedings. Those proceedings are then adjudicated by hearing panels whose members are independent attorneys appointed by the Board.

Because the investigatory/enforcement responsibilities and the adjudicative responsibilities are functionally separate within the Board, Rule 9 does not violate due process principles. As the Colorado Supreme Court observed in upholding its attorney disciplinary structure, "[t]he contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias . . . must overcome a presumption of honesty and integrity in those serving as adjudicators," and "[n]othing in the structure of the disciplinary rules, the grievance committee, or the Office of Disciplinary Counsel overcomes this presumption." *Varallo*, 913 P.2d at 4-5 (citation and internal quotation marks omitted). The court further observed that it ultimately held the power of review over these adjudicators, further reducing the risk of bias. *Id*. at 5.

This reasoning applies directly to the circumstances in Tennessee. Under Tennessee's system, the investigation/enforcement function is separate from the adjudicative function, and "the ultimate power of review is held by this court." *Id.* Consistent with *Varallo*, *Withrow*, and the other cases cited above, we hold that Rule 9 is not facially unconstitutional on the ground that it combines investigatory, enforcement, and adjudicative functions in the Board.

Mr. Long's two other constitutional arguments are related, and we therefore address them together. Mr. Long asserts that Rule 9, Section 24 creates a financial incentive for the Board to initiate formal disciplinary proceedings. He also contends that the Rule results in an "institutional bias" in favor of finding the respondent guilty of misconduct and imposing a disciplinary sanction.

Rule 9, Section 24 provides, in pertinent part:

> **24.1. Expenses.** The salaries of Disciplinary Counsel and staff, their expenses, administrative costs, and the expenses of the members of the Board and of members of the district committees shall be paid by the Board out of the funds collected under the provisions of Rule 9.
>
> . . . .
>
> **24.3. Reimbursement of Costs.** In the event that a judgment of disbarment, suspension, public censure, private reprimand, temporary suspension, disability inactive status, reinstatement, or denial of reinstatement results from formal proceedings, the Board shall assess against the respondent the costs of the proceedings, including court reporter's expenses for appearances and transcription of all hearings and depositions, the expenses of

the hearing panel in the hearing of the cause, and the hourly charge of Disciplinary Counsel in investigating and prosecuting the matter.

. . . .

The hourly charges of Disciplinary Counsel on formal proceedings . . . filed on or after January 27,1992, shall be assessed at $30 per hour for investigative time incurred prior to the filing of formal proceedings and $80 per hour in connection with formal proceedings.

Payment of the costs assessed by the Board pursuant to this rule shall be required as a condition precedent to reinstatement of the respondent attorney.

Mr. Long contends that, as a result of Section 24, the Board has a financial incentive to initiate formal proceedings against Tennessee attorneys simply to derive income from the costs assessed under Section 24.3. Mr. Long argues that this offends due process. *Connally v. Georgia*, 429 U.S. 245 (1977); *In re Dender*, 571 S.W.2d 491 (Tenn. 1978).

In response, the Board asserts that the cases relied upon by Mr. Long are not analogous to a disciplinary proceeding. For example, the Board observes that *Connally v. Georgia* involved a justice of the peace who received a fee for issuing a search warrant but collected no fee for denying a search warrant. Because the justice of the peace did not receive a salary and was compensated only when he issued search warrants, the United States Supreme Court held that "the issuance of the search warrant by the justice of the peace . . . effected a violation of the protections afforded [Mr. Connally] by the Fourth and Fourteenth Amendments of the United States Constitution." *Connally*, 429 U.S. at 251. Similarly, based on analogous facts to *Connally*, we held in *In re Dender* that "the issuance of a state's warrant by a non-salaried justice of the peace does not satisfy the requirements of a neutral and detached magistrate and is violative of the Fourteenth Amendment to the Constitution of the United States and Article 1, Section 8 of the Constitution of Tennessee." *In re Dender*, 571 S.W.2d at 492.

Unlike the respective justices of the peace in *Connally* and *In re Dender*, the members of the Hearing Panel receive no compensation, other than reimbursement for travel expenses, for sitting as the adjudicatory body in a disciplinary matter. For that reason, we reject Mr. Long's claim that Rule 9 is unconstitutional under *Connally* and *In re Dender*.

Mr. Long's institutional-bias argument is based on *Ward v. Village of Monroeville*, 409 U.S. 57 (1972) and *In re Ross*, 656 P.2d 832 (Nev. 1983). In *Ward*, the mayor of

Monroeville, Ohio, sat as a judge in cases of ordinance violations and certain traffic offenses. The mayor also "account[ed] annually to the council respecting village finances," and "[a] major part of village income [was] derived from the fines, forfeitures, costs, and fees imposed by him in his mayor's court." *Ward*, 409 U.S. at 58. After the mayor convicted Mr. Ward of two traffic offenses and fined him fifty dollars for each offense, Mr. Ward appealed, ultimately to the United States Supreme Court. Addressing Mr. Ward's contention that the mayor was not a detached and neutral magistrate because of his responsibility for the village's finances, the Supreme Court wrote:

> the test is whether the mayor's situation is one "which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the accused . . . ." Plainly that "possible temptation" may also exist when the mayor's executive responsibilities for village finances may make him partisan to maintain the high level of contribution from the mayor's court. This, too, is a "situation in which an official perforce occupies two practically and seriously inconsistent positions, one partisan and the other judicial, (and) necessarily involves a lack of due process of law in the trial of defendants charged with crimes before him."

*Id.* at 60 (quoting *Tumey v. Ohio*, 273 U.S. 510, 532, 534 (1927)) (citations omitted).

The circumstances in the pending case are not analogous to the situation in *Ward*. The members of a hearing panel have no responsibility for the budget or the finances of the Board. *Ward* is therefore inapplicable.

Mr. Long also cites *In re Ross* in support of his institutional-bias argument. That case involved a formal disciplinary proceeding against three attorneys conducted by the Board of Governors of the State Bar of Nevada. *In re Ross*, 656 P.2d at 834. After the Board of Governors decided to discipline two of the attorneys for being untruthful during the disciplinary process, one of the attorneys challenged the validity of the process on appeal to the Nevada Supreme Court. *Id.* at 835. The attorney asserted that adjudication of the disciplinary hearing by the Board of Governors—the same body primarily responsible for the finances of the Bar—violated his due process right to an impartial tribunal since "the Board could only recoup its considerable expenses [for] the proceedings if charges of misconduct were sustained." *Id.*

The Nevada Supreme Court observed that the Board of Governors had primary responsibility for the Bar Association's finances and that the assessment sought against the two attorneys "was equal to nearly 20% of the State Bar's total revenue, and would more

than have defrayed its yearly deficit." *Id*. at 836. The court concluded that this procedure of grouping adjudicatory duties and financial responsibilities within the same individuals and conditioning recovery of substantial costs only upon a finding of misconduct violated the due process rights of the accused. *Id*. at 840.

*In re Ross* is inapposite to Mr. Long's case. As discussed, the investigative, enforcement, and adjudicative functions of the Board are separate functions performed by different groups of people. Moreover, the Panel that adjudicated the disciplinary charges against Mr. Long is not "the body with primary responsibility for the finances of the [Board]." *Id*. at 836. Therefore, Mr. Long's reliance on *In re Ross* to support his institutional-bias argument is misplaced.

For the foregoing reasons, Mr. Long's argument that Rule 9 is unconstitutional is without merit.

## VII. CONCLUSION

For the reasons stated above, the judgment of the Chancery Court is affirmed. The costs of this appeal are assessed to Fletcher W. Long and his surety, for which execution may issue if necessary.

_____
SHARON G. LEE, JUSTICE