FILED
06/23/2026
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 5, 2026 Session

# IN RE ESTATE OF SHAWN EDWARD SHEEKS

**Appeal from the Chancery Court (Probate Division) for Montgomery County**
**No. MC-CH-CV-PB-18-50      Ben Dean, Chancellor**

## No. M2025-01358-COA-R3-CV

Shawn Sheeks ("Decedent") and Paul Slate ("Mr. Slate") co-owned and managed several business entities. Following Decedent's untimely death, Mr. Slate, acting on behalf of the businesses they co-owned, filed a Verified Claim against Decedent's estate in the Chancery Court (Probate Division) for Montgomery County seeking an accounting and damages of $382,207.48. Shortly thereafter, Janet Sheeks ("Ms. Sheeks"), Decedent's widow and the Administratrix of the Decedent's estate, filed a complaint in the Chancery Court for Davidson County (hereinafter "the Business Court") on behalf of herself and Decedent's estate against Mr. Slate seeking an accounting and to windup and dissolve the business entities. Mr. Slate filed a counterclaim against the estate and Ms. Slate, as well as cross-claims against the business entities, seeking an accounting and payment for debts allegedly owed to him. While the Claim in the Probate Court was held in abeyance, all claims by and among the parties in the Business Court were tried. In a detailed and thorough final order, the Business Court ordered dissolution of the business entities and allocated the distribution of the assets among the parties after applying offsets and credits. No one appealed the judgment from the Business Court. Thereafter, the Administratrix of the Estate filed a motion for summary judgment in this Probate Court proceeding contending the Claim should be dismissed on the ground of *res judicata*. The Probate Court granted the motion and summarily dismissed the Claim on the ground of *res judicata* finding that the Claim was not a separate and distinct cause of action from the Business Court action, that the underlying facts at issue were the same in both lawsuits, and that the Claim could have, and should have, been litigated in the Business Court action. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., C.J., delivered the opinion of the court, in which W. NEAL MCBRAYER, and CARMA DENNIS MCGEE, JJ., joined.

John R. Bradley, Hendersonville, Tennessee, for the appellant, Paul W. Slate.

B. Nathan Hunt, Clarksville, Tennessee, for the appellee, Estate of Shawn Edward Sheeks.

## OPINION

For several years Decedent and Mr. Slate managed and co-owned various businesses including Lyk-Nu Collision Centers, LLC, Lyk-Nu of Hendersonville, Inc., Goliath, LLC, 5 Stones, LLC, and Reliable Carz, Inc. (hereinafter "the Entities"). Most of the Entities were owned equally by Decedent and Mr. Slate, but Goliath, LLC, was different, as Mr. Slate owned a 57% membership interest while Mr. Sheeks owned a 43% interest.

On August 19, 2017, Decedent died intestate. On February 8, 2018, his wife, Janet Sheeks, filed a petition with the Montgomery County Chancery Court (Probate Division) (the "Probate Court") to administer the estate. She was appointed the personal representative of the Estate of Shawn Edward Sheeks (the "Estate") and Letters of Administration were issued on February 9, 2018.

On June 14, 2018, Mr. Slate filed a Verified Claim, (the "Verified Claim" or the "Claim") in the Probate Court for $382,207.48 against the Estate.[1] The "Items and Nature of Claim" as stated on the Verified Claim reads: "Arising from checks and withdrawals made from company accounts for which there is no accounting and which do not reflect equally with the co-owner, Paul Slate." Ms. Sheeks, individually and in her capacity as Administratrix of Decedent's estate, filed a timely exception to the Claim on June 29, 2018, denying liability.

Thereafter, on August 13, 2018, Ms. Sheeks, individually and as Administratrix of the Estate, commenced a civil action in the Business Court (Davidson County Chancery) against Mr. Slate for, inter alia, breach of the Entities' respective operating agreements and for breaching his fiduciary duties of good faith, loyalty and care to the Entities and the other member/partner/shareholder. *See Sheeks v. Slate*, No. 18-0888-II (Ch. Ct., Davidson Cnty. Jul. 3, 2024). She also sought dissolution and winding up of the Entities with the appropriate distribution of the assets following an accounting.

In addition to filing an answer to the Business Court complaint, Mr. Slate filed a counterclaim for repayment of various purported loans Lyk-Nu made to Ms. Sheeks as well as claims of breach of contract, unjust enrichment, and conversion. Mr. Slate also filed a cross-complaint against Lyk-Nu Collision Centers, LLC, Goliath, LLC, and 5 Stones, LLC, seeking to collect outstanding loans he made to the companies in the amount of $2,532,676.

---

[1] Mr. Slate signed the Claim form, which listed the Entities, as "Creditor"; nevertheless, Mr. Slate insists that he was the creditor. In Mr. Slate's appellate brief, he states: "The claim was properly brought by Mr. Slate in his capacity as a partner, seeking payment from the Estate for the distributions made by his deceased partner, Mr. Sheeks, without equal distributions to Mr. Slate."

He also sought equitable distribution of the funds being held by the court on behalf of the Entities. Ms. Sheeks filed an answer denying the claims asserted by Mr. Slate in his counterclaim and was granted leave to intervene as a cross-defendant in Mr. Slate's cross-complaint.

On August 27, 2018, Ms. Sheeks filed a motion for the appointment of a receiver and custodian in the Business Court action to wind up the businesses and marshal their assets. She alleged that Mr. Slate was not properly managing the Entities. This motion was withdrawn before the hearing scheduled for September 14, 2018, because on September 11, 2018, the parties entered a Standstill Agreement[2] for six months during which time the parties agreed to attempt to sell the businesses. The Standstill Agreement expired without the Entities being sold as going concerns. Over the course of 2019, various Lyk-Nu entities were closed and the related property sold with the proceeds going to pay off loans or into the court's registry, and many of the debts were assigned. After status conferences in the fall of 2019, the Business Court granted Ms. Sheeks's renewed request to appoint a receiver in February 2020. The Receiver sold the Lebanon property with court approval and held the net proceeds in an interest-bearing account pending further orders.[3]

While the Probate Court Claim remained dormant, the Business Court action was tried over two days in February 2024. On July 3, 2024, the Business Court entered its thorough and detailed final order in which it dissolved the Entities and dismissed Ms. Sheeks' claims for breach of contract and breach of fiduciary duty against Mr. Slate. The court further found that Mr. Slate had not "brought sufficient proof" to support his claims that Lyk-Nu had made loans to Ms. Sheeks; therefore, it dismissed Mr. Slate's counterclaims against Ms. Sheeks. Mr. Slate was awarded a judgment against 5 Stones, LLC, Goliath, LLC, and Lyk-Nu Collision Centers, LLC for five loans he made to the businesses before the Decedent's death. The trial court declined to award Mr. Slate any money for loans made after the Decedent's death, finding the purported loans unenforceable. And after applying offsets and credits owed by or to the parties and Entities, the court specified in its final order the exact amount of funds to be awarded to the Estate, Mr. Slate and Ms. Sheeks respectively from the proceeds of the sale of the Entities. No one appealed the final judgment in the Business Court.

---

[2] The Standstill Agreement held "the [p]arties agree to a standstill of the aforementioned disputes from the date of execution . . . until the [c]ompanies are sold or for six (6) months following the execution of [the] [a]greement." "[A]ny deadlines, time periods, or limitations periods" relating to the lawsuits were tolled during the pendency of the Standstill Agreement. After the Standstill Agreement expired, the businesses had not been sold, and the litigation continued in the Business Court action.

[3] The net proceeds from the sale of the Lebanon property were $1,309,307.96. Additionally, the Receiver was also holding in trust an additional $715,172.92 pursuant to an order entered on August 30, 2023, in which the court instructed the Clerk and Master to "release the funds to the Receiver for deposit into an interest-bearing account and to handle further deposits."

After the judgment in the Business Court became a final non-appealable judgment, the Estate filed a motion in this Probate Court proceeding seeking summary dismissal of the Verified Claim on the ground of *res judicata*. The Estate argued that the Claim involved the same parties, circumstances and causes of action as in the Business Court action; thus, they could and should have been raised in the Business Court action, but were not.

On September 12, 2024, Mr. Slate filed a response in opposition to the Estate's motion for summary judgment. He argued that the Estate was not entitled to summary judgment because the Business Court action and Probate Court Claim asserted different causes of action. Thus, he contended, *res judicata* did not apply. Mr. Slate also argued that the Verified Claim alleged fraud, which is a tort claim that is separate and distinct from the claims and causes of action at issue in the Business Court.

In an on order entered on September 25, 2024, the Probate Court granted summary judgment for the Estate holding, in pertinent part, that "the Verified Claim does not make a separate fraud allegation," "the Verified Claim against the Estate is not a separate and distinct cause of action from the [Business Court] action," "the underlying facts at issue in the Verified Claim Against Estate were the same set of facts at issue in the [Business Court] action," and the claims "could have been and should have been, litigated in the [Business Court] action."

This appeal by Mr. Slate followed.

The parties present the same issue on appeal: Whether the trial court properly dismissed this claim by summary judgment based on the doctrine of *res judicata*.

## STANDARD OF REVIEW

A trial court's ruling that a claim is barred by the doctrine of *res judicata* is a question of law, which appellate courts review de novo without a presumption of correctness. *Regions Bank v. Prager*, 625 S.W.3d 842, 848 (Tenn. 2021).

Likewise, our review of a trial court's decision to dismiss based on summary judgment is also reviewed de novo. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Summary judgment may be rightly entered when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

## ANALYSIS

"The doctrine of res judicata or claim preclusion bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or

- 4 -

could have been, litigated in the former suit." *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012). Our Supreme Court has described it as a "rule of rest." *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976). *Res judicata* "promotes finality in litigation, prevents inconsistent or contradictory judgments, conserves judicial resources, and protects litigants from the cost and vexation of multiple lawsuits." *Weatherby Grp., LLC v. Heritage Tr. Co.*, No. E2024-01372-COA-R3-CV, 2025 WL 2400958, at *2 (Tenn. Ct. App. Aug. 19, 2025). Furthermore, *res judicata* "prevents . . . plaintiffs from fragmenting their accrued claims by litigating part of them to a final judgment and then filing a second suit against the same defendant on alternate claims or theories." *Lowe v. First City Bank of Rutherford Cnty.*, No. 01-A-01-9305-CV00205, 1994 WL 570082, at *3 (Tenn. Ct. App. Oct. 19, 1994).

To succeed on a defense based on *res judicata*, a party must show "(1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits." *Long v. Bd. of Prof'l Responsibility of Supreme Court*, 435 S.W.3d 174, 183 (Tenn. 2014).

Here, the parties agree that three of the four prongs of *res judicata* are satisfied; namely, that the underlying judgment was rendered by a court of competent jurisdiction, that the same parties or privies were involved in both, and that the underlying judgment was final and on the merits. *See id*. The only factor in dispute is whether the same claim or cause of action was or could have been asserted in both actions. *See Jackson v. Smith*, 387 S.W.3d at 491; *see also Brown v. Shappley*, 290 S.W.3d 197, 200 (Tenn. Ct. App. 2008) (quoting *Am. Nat'l Bank and Trust Co. of Chattanooga v. Clark*, 586 S.W.2d 825, 826 (Tenn. 1979) ("*res judicata* applies not only to issues actually raised and adjudicated in the prior lawsuit, but to 'all claims and issues which were relevant and which could reasonably have been litigated in a prior action.'").

We first note that the Business Court's final order is detailed and comprehensive. In a 41-page memorandum opinion and order, the court thoroughly explained the relationship between Mr. Slate, Decedent and the Entities, the history of their multiple business endeavors, and the more than six years of litigation that followed Decedent's death. The opinion provided a thoughtful analysis and disposition for the claims, counterclaims and crossclaims alleged by and among the parties. At its core, the claims in the Business Court action alleged nonproportionate disbursements by Mr. Slate, Decedent and/or Ms. Sheeks as well as loans to and by the Entities that allegedly violated the operating agreements which unjustly enriched either Mr. Slate, Decedent or Ms. Sheeks. Further, the relief sought was for an accounting of the various transactions involving the Entities they owned so that a proportionate distribution could be made to Mr. Slate or Decedent's estate following the dissolution and winding up of the business affairs of each entity and necessary accounting. Similarly, the Verified Claim filed in the Probate Court reads: "Arising from checks and

withdrawals made from company accounts for which there is no accounting and which do not reflect equally with the co-owner Paul Slate."

As noted above, the doctrine of *res judicata* prevents claims that reasonably could have or should have been tried in a prior case from being relitigated. *Brown*, 290 S.W.3d at 200. Here, it is readily apparent that the Verified Claim, which seeks an "accounting" and equitable distribution of assets from the Entities to its members/partners/shareholders arise out of the same acts, transaction and occurrences as litigated the Business Court. In each case the claims and counterclaims include allegations that disbursements or withdrawals by Decedent and/or by Mr. Slate from business accounts violated the various Operating Agreements to the detriment of the other member/partner/shareholder for which an accounting was needed to effect an equitable distribution of the remaining assets. Moreover, during oral arguments, counsel for Mr. Slate acknowledged that "no one would argue that the parties could have put this all together in one case in Davidson County." Having acknowledged that the matters at issue in the Verified Claim could have been tried in the Business Court action, Mr. Slate must successfully argue an exception to *res judicata* to pursue the Verified Claim in this probate court proceeding.

In this regard, Mr. Slate contends that *res judicata* is not applicable because the Verified Claim asserts a claim of fraudulent conduct by Decedent. In making this argument, Mr. Slate relies on Tennessee Rule of Civil Procedure 13.01 which requires that pleadings "state as a counterclaim any claim, *other than a tort claim*, which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[.]" (emphasis added). Tenn. R. Civ. P. 13.01. Accordingly, "[c]laims arising out of tort are not compulsory counterclaims." *Old Hickory Eng'g & Mach. Co., Inc. v. Henry*, No. 01-A-019106-CV-00216, 1991 WL 214714, at *2 (Tenn. Ct. App. Oct. 25, 1991). Because fraud sounds in tort, Mr. Slate argues that the Verified Claim was not a compulsory counterclaim in the Business Court action and therefore is not subject to *res judicata* in the instant case. But as the Probate Court noted in summarily dismissing the Verified Claim, there is no allegation of fraud in the Verified Claim. Rather, the Verified Claim states that it arises from transactions made from company accounts "for which there is no accounting and which do not reflect equally with the co-owner, Paul Slate."

We acknowledge that probate pleadings and procedures are designed to be "simple, expeditious, and informal." *Estate of Green v. Carthage Gen. Hosp., Inc.*, 246 S.W.3d 582, 584 (Tenn. Ct. App. 2007). Nevertheless, the allegation that the distributions were not proportional or were inconsistent with the operating agreements falls far short of a claim of fraud. Furthermore, "failing to properly raise the issue of fraud, which 'could have been litigated and decided as an incident to or essentially connected with the subject matter of the prior litigation,' results in forfeiture of that opportunity in a subsequent action pursuant to the doctrine of *res judicata*." *Nucsafe, Inc. v. Farber*, No. E2023-01809-COA-R3-CV,

2024 WL 3898538, at *6 (Tenn. Ct. App. Aug. 22, 2024) (quoting *Davis v. Williams*, No. E2010-01139-COA-R3-CV, 2011 WL 335069, at *3–4 (Tenn. Ct. App. Jan. 31, 2011).

Based on the foregoing, we agree that the Verified Claim is barred based on the ground of *res judicata*. Thus, we affirm the summary dismissal of the Verified Claim.

### IN CONCLUSION

Accordingly, we affirm the judgment of the trial court and costs of appeal are assessed against the appellant, Paul W. Slate.

_____
FRANK G. CLEMENT JR., C.J.