# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 5, 2014 Session

## WILLIAM CALDWELL HANCOCK v.
## BOARD OF PROFESSIONAL RESPONSIBILITY
## OF THE SUPREME COURT OF TENNESSEE

**Direct Appeal from the Chancery Court for Davidson County**
**Nos. 11-1816-IV & 11-1797-IV      Donald P. Harris, Special Judge**

---

**No. M2012-02596-SC-R3-BP - Filed September 3, 2014**

---

A federal bankruptcy court entered judgment denying a Nashville attorney's application for approximately $372,000 in attorney's fees and expenses.  Nine months later, the attorney emailed the bankruptcy judge who denied his fee application, calling the judge a "bully and clown" and demanding that he provide a written apology for denying the fee application. The Board of Professional Responsibility instituted a disciplinary action against the attorney, and a hearing panel of the Board found that the attorney violated several Rules of Professional Conduct by sending the email and recommended that the attorney be suspended from the practice of law for thirty days.  The chancery court modified the hearing panel's judgment to include additional violations for misconduct associated with the attorney's briefs filed in the district court but affirmed the remainder of the hearing panel's judgment.  The attorney timely appealed to this Court.  We affirm the hearing panel's conclusion that the attorney's email violated the rule against ex parte communications and was also sanctionable as "conduct intended to disrupt a tribunal."  We conclude, however, that the hearing panel erred by finding the attorney in violation of the ethical rule that prohibits attorneys from making false statements about the qualifications or integrity of a judge.  We also reverse the chancery court's modification of the hearing panel's judgment.  We affirm the attorney's thirty-day suspension from the practice of law.

### Tenn. Sup. Ct. R. 9, § 1.3 Direct Appeal;
### Judgment of the Chancery Court Affirmed in Part; Reversed in Part

JANICE M. HOLDER, J., delivered the opinion of the Court, in which SHARON G. LEE, J., joined.  GARY R. WADE, C.J., and CORNELIA A. CLARK, J., each filed a concurring opinion. WILLIAM C. KOCH, JR., J., not participating.

William Caldwell Hancock, Nashville, Tennessee, Pro Se.

Krisann Hodges, Brentwood, Tennessee, for the appellee, Board of Professional Responsibility of the Supreme Court of Tennessee.

**OPINION**

I. Facts and Procedural History

On August 20, 2010, the Board of Professional Responsibility of the Supreme Court of Tennessee ("the Board") filed a petition for discipline against William Caldwell Hancock, an attorney licensed in Tennessee since 1977. In its petition, the Board alleged that Mr. Hancock violated a number of the Rules of Professional Conduct while acting as debtor's counsel for Barnhill's Buffet, Inc. ("Barnhill's") in a bankruptcy action filed in the United States Bankruptcy Court for the Middle District of Tennessee.[12] On February 1, 2011, the Board amended its petition for discipline, but the facts alleged in the Board's initial and amended petitions are identical. A hearing panel heard the case on October 11 and 12, 2011, during which the following facts were revealed.

On December 3, 2007, Mr. Hancock filed a voluntary bankruptcy petition on behalf of Barnhill's in the United States Bankruptcy Court for the Middle District of Tennessee. After several months of contentious litigation, Mr. Hancock moved to withdraw as Barnhill's counsel on April 18, 2008, stating:

> [I have] been subjected to what are considered to be criminal threats of adverse action to be taken unless [Barnhill's] or other parties could not or would not affirmatively meet the demand of other counsel for a set aside of estate or creditor assets to secure said counsel's legal fees, which threats turned into reality when those demands were not met. The United States Trustee seems unwilling to remedy that misconduct. That same counsel has knowingly made (and refused to withdraw) wholly false allegations regarding [me] and [Barnhill's] management in order to leverage a fees carve out of $45,000 from a creditor who opposed conversion.

Mr. Hancock subsequently filed a notice to withdraw his motion, but his employment was eventually terminated when Barnhill's bankruptcy was converted to a Chapter 7 proceeding

---

[12] The Board's petition also alleged that Mr. Hancock violated several rules of professional conduct while acting as debtor's counsel for Innovative Entertainment Concepts, Inc. ("IEC") in another voluntary bankruptcy action that was filed in the United States Bankruptcy Court for the Middle District of Tennessee. The hearing panel determined, however, that Mr. Hancock had not committed professional misconduct in the IEC case, and the hearing panel's findings in that regard are not challenged by either party in this appeal. We have therefore limited our discussion of the issues in this opinion to Mr. Hancock's relevant conduct in the Barnhill's case.

and a trustee was appointed. On June 3, 2008, Mr. Hancock filed an initial fee application with the bankruptcy court seeking $355,975 for attorney's fees and expenses. The United States Trustee objected to Mr. Hancock's fee application, arguing, among other things, that Mr. Hancock's fees were unnecessarily and unreasonably inflated by his "abusive . . . litigation tactics" during the case and by his failure to make adequate disclosures concerning his alleged prior representation of an interested party in the Barnhill's case. On July 7, 2008, Mr. Hancock filed a First and Final Application for Allowance of Compensation, seeking $356,554.50 in fees and $1071.55 in expenses. Mr. Hancock amended his final fee application on July 17, 2008, requesting total compensation in the amount of $372,967.55 for attorney's fees and expenses.

Following a five-day hearing, the bankruptcy court entered a twenty-six-page memorandum opinion on December 9, 2008, denying Mr. Hancock's request for fees but awarding him $1071.55 for expenses. In support of its denial of Mr. Hancock's fee, the bankruptcy court described Mr. Hancock's behavior throughout the Barnhill's case as "unprofessional," "dilatory," "disruptive," "troubling," "unacceptable," "abusive," "intractable," and "unfortunate." The bankruptcy court acknowledged that Mr. Hancock possessed a "keen intellect and understanding of bankruptcy law," but it was "troubled deeply" by his conduct and was "saddened by [his] apparent inability to either realize or control his inappropriate actions and his propensity for conservative disclosures rather than overt transparency."

Mr. Hancock appealed the bankruptcy court's denial of his fee to the United States District Court for the Middle District of Tennessee. Mr. Hancock's brief was due to be filed in the district court on March 27, 2009, but on March 25, 2009, he moved to extend the time for filing a brief, which the district court granted, extending Mr. Hancock's filing deadline to April 27, 2009. On May 1, 2009, Mr. Hancock filed a second motion to extend his time for filing a brief and additionally sought "permission to file a brief in excess of [twenty-five] but not more than [fifty] pages in length." The district court granted Mr. Hancock's requests on May 11, 2009. As of August 5, 2009, however, Mr. Hancock had not yet filed a brief, and the district court therefore entered an order to show cause why his appeal should not be dismissed. Rather than respond to the district court's show cause order, Mr. Hancock filed a 128-page brief on August 14, 2009.

The Trustee moved to dismiss Mr. Hancock's appeal or, in the alternative, to compel his compliance with the district court's prior order limiting his brief to fifty pages. On August 31, 2009, the district court entered an order requiring Mr. Hancock to file a revised brief not to exceed fifty pages. In response, Mr. Hancock filed a "revised brief" on September 21, 2009. Although the two briefs were substantively identical, the font size and spacing used in the revised brief reduced its size from 128 pages to fifty-one pages. Rather than dismiss Mr. Hancock's appeal for his failure to file a compliant brief, the district court entered an order on September 23, 2009, summarily affirming the bankruptcy court's ruling.

In its order, the district court explained that it chose a summary affirmance because it "fully expect[ed Mr. Hancock] to appeal further to the Sixth Circuit Court of Appeals, where he might receive a decision on the merits."

On September 28, 2009, Mr. Hancock sent the following email to Judge George Paine, the bankruptcy court judge who denied his fee application in the Barnhill's case:



"Caldwell Hancock" &lt;hancocklaw@comcast.net&gt;

To &lt;george_paine@tnmb.uscourts.gov&gt;

cc

bcc

09/28/2009 08:21 PM

Subject FW: Past Due Rent Suites 243 and 245

History:    ⤷ This message has been forwarded.

I have been thinking about what you did to me and my family every hour of every day since last December. I get little reminders every day. Here's one from a few days ago demonstrating the product of your handiwork.

My family and I are still waiting for your written apology.

I also invite you to meet with me face to face - if you have the courage - and explain to me man to man and eye to eye WHY you denied my fees  - I say "why" because you should know and I do know that the garbage you published is not law and not fact and is just cover -

there is an unspoken "why" and I have a pretty good idea what it is but really would like to hear it from your lips if you have the courage to be truthful -

and I want you to tell me why you chose to trash me and my work and skills in words that no decent human being would dare manufacture and publish about another unless his intention was to destroy another's livelihood.

I am available just about every day at lunchtime at any place suitable to you.

You have singlehandedly destroyed my ability to make a living - If you have a decent bone in your body you will get down off your high horse and act like a man instead of a bully and clown, show some honesty and integrity now that you have proved  your point, and repair the damage you have done. The written apology would be a good starting place and the confession would be good for your immortal soul. Then maybe you and I can find a way to make peace with each other.  Don't you think that would be a really good idea?

I look forward to hearing from you.

Caldwell Hancock

The Hancock Law Firm

102 Woodmont Boulevard, Suite 200

Nashville, TN 37205

(615) 345-0202

(615) 296-0947 fax

-4-

Two days after sending the email, Mr. Hancock appealed to the Sixth Circuit, which affirmed the district court's decision. See Hancock v. McDermott, 646 F.3d 356, 360 (6th Cir. 2011).

<u>Findings of the Hearing Panel</u>

On November 2, 2011, the hearing panel filed its written findings with the Board in compliance with Tennessee Supreme Court Rule 9. See Tenn. Sup. Ct. R. 9, § 8.3 (requiring the hearing panel to submit its written findings within fifteen days of the conclusion of the hearing).[13] The hearing panel concluded that by sending the email to Judge Paine, Mr. Hancock violated Rules 3.5(b)[14] and (e),[15] 8.2(a)(1),[16] and 8.4(a) and (d).[17] The hearing panel, however, did not find that Mr. Hancock violated any other Rules of Professional Conduct as alleged by the Board in its petitions.[18] The hearing panel considered the American Bar Association's Standards for Imposing Lawyer Sanctions ("ABA Standards") and determined that a suspension was appropriate. The hearing panel next determined that the Board had proven the following aggravating factors: (1) Mr. Hancock's multiple

---

[13] Effective January 1, 2014, this Court made comprehensive changes to Rule 9. The events described in this opinion, however, occurred prior to the effective date of our rule change. Any references in this opinion to Rule 9 are therefore to the version in effect at the time of Mr. Hancock's disciplinary hearing.

[14] Tennessee Supreme Court Rule 8, RPC 3.5(b) provides that "[a] lawyer shall not . . . communicate ex parte with [a judge] during the proceeding unless authorized to do so by law or court order."

[15] Tennessee Supreme Court Rule 8, RPC 3.5(e) prohibits lawyers from "engag[ing] in conduct intended to disrupt a tribunal," and this prohibition extends "to any proceeding of a tribunal, including a deposition." Tenn. Sup. Ct. R. 8, RPC 3.5, cmt. 6.

[16] Tennessee Supreme Court Rule 8, RPC 8.2(a)(1) states that "[a] lawyer shall not make a statement that the lawyer knows to be false or that is made with reckless disregard as to its truth or falsity concerning the qualifications or integrity of [a judge]."

[17] Tennessee Supreme Court Rule 8, RPC 8.4(a) states, "It is professional misconduct for a lawyer to violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another." Similarly, Tennessee Supreme Court Rule 8, RPC 8.4(d) provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice."

[18] The hearing panel rejected the Board's contention that Mr. Hancock violated the following Rules of Professional Conduct during the Barnhill's case: 1.5(a) (fees), 1.7(a) (conflicts), 3.2 (expediting litigation), 3.3(a)(1) (candor toward the tribunal), 3.4(c) (fairness to opposing counsel), 3.5(e) (impartiality and decorum of the tribunal), 4.4(a) (respect for the rights of third persons), and 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation). The hearing panel also found that Mr. Hancock's email to Judge Paine did not violate Rule 4.1(a), which states that "[i]n the course of representing a client, a lawyer shall not knowingly make a false statement of material fact or law to a third person." Tenn. Sup. Ct. R. 8, RPC 4.1.

-5-

offenses; (2) his refusal to acknowledge the wrongful nature of his conduct; and (3) his substantial experience in the practice of law. In mitigation, the hearing panel considered Mr. Hancock's personal and emotional problems during and after the Barnhill's case. Based on its assessment of the evidence and the relevant aggravating and mitigating circumstances, the hearing panel concluded that Mr. Hancock should be suspended from the practice of law for thirty days.

Both parties appealed the hearing panel's judgment by filing separate petitions for certiorari in the Chancery Court for Davidson County. See Tenn. Sup. Ct. R. 9, § 1.4 ("An appeal from the recommendation or judgment of a hearing panel must be filed in the circuit or chancery court of the county wherein the office of the respondent[-attorney] was located at the time the charges were filed with the Board."). The chancery court heard arguments from counsel and entered judgment on October 25, 2012, affirming Mr. Hancock's thirty-day suspension but modifying the hearing panel's judgment to include violations of Rules 3.2,[19] 3.4(c),[20] 8.4(a), and 8.4(d) for failing to file a brief in the district court that complied with the district court's prior orders and with its local rules.[21]

In its memorandum opinion, the chancery court explained that although the hearing panel found that Mr. Hancock's revised brief failed to comply with the district court's orders and with the local rules, the hearing panel nevertheless failed to find Mr. Hancock in violation of the Rules of Professional Conduct for his actions concerning the district court brief. The chancery court concluded that the hearing panel's failure to make these findings "appears to have been an oversight and . . . renders the decision of the hearing panel arbitrary with regard to these alleged violations. . . ." The chancery court further explained that it modified the judgment rather than remand the case to the hearing panel because "the violations alleged would not justify the imposition of additional sanctions and this matter needs to be concluded." Accordingly, the chancery court affirmed Mr. Hancock's thirty-day suspension from the practice of law, and Mr. Hancock timely appealed to this Court.

---

[19] Tennessee Supreme Court Rule 8, RPC 3.2 states, "A lawyer shall make reasonable efforts to expedite litigation."

[20] Tennessee Supreme Court Rule 8, RPC 3.4(c) prohibits lawyers from "knowingly disobey[ing] an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists."

[21] On February 12, 2014, Mr. Hancock filed a "Motion to Annul the Judgment on Appeal for Fraud Perpetrated Upon Disciplinary Tribunals and the Court by Disciplinary Counsel" in this Court. In his motion, Mr. Hancock argues that the district court's order did not impose a fifty-page limit for his brief. After considering Mr. Hancock's motion, the Board's response, and the entire record, we conclude that Mr. Hancock's motion is without merit, and it is therefore denied.

## II. Analysis

Our review of the hearing panel's judgment is governed by Tennessee Supreme Court Rule 9, section 1.3, which provides as follows:

> The court may reverse or modify the [hearing panel's] decision if the rights of the petitioner have been prejudiced because the panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in light of the entire record.

Absent these limited circumstances, the hearing panel's decision should not be disturbed on appeal. Maddux v. Bd. of Prof'l Responsibility, 409 S.W.3d 613, 621-22 (Tenn. 2013). Tennessee Supreme Court Rule 9, section 1.3 further prohibits us from substituting our judgment for that of the hearing panel on questions of fact and the weight of the evidence.

### A. Ex Parte Communication

We first address Mr. Hancock's contention that the hearing panel erred by finding him in violation of Tennessee Supreme Court Rule 8, RPC 3.5(b), which states that "[a] lawyer shall not communicate ex parte with [a judge] during the proceeding unless authorized to do so by law or court order." Mr. Hancock maintains that because he had appealed Judge Paine's ruling before he sent the email, it was not sent "during the proceeding" and is therefore not an ex parte communication. See generally Malmquist v. Malmquist, 415 S.W.3d 826 (Tenn. Ct. App. 2011), perm. app. denied (Tenn. Feb. 21, 2012) (concluding that a trial judge was not required to recuse himself from a case when a threat allegedly made by one of the litigants was communicated to the trial judge through a third party while the case was on appeal). In contrast, the Board argues that although Mr. Hancock had appealed, his email was sent while the Barnhill's bankruptcy was ongoing in Judge Paine's court. The Board therefore contends that Mr. Hancock's email was sent "during the proceeding."

The phrase "during the proceeding" is not defined in Rule 3.5 or in its accompanying comments. Comment 1 to Rule 3.5 states, however, that "[m]any forms of improper influence upon a tribunal . . . are specified in the Tennessee Code of Judicial Conduct, with which an advocate should be familiar." The Code of Judicial Conduct's analog to Rule 3.5 prohibits judges from "initiat[ing], permit[ting], or consider[ing] ex parte communications . . . concerning a pending or impending matter." Tenn. Sup. Ct. R. 10, RJC 2.9. The Code of Judicial Conduct defines a "pending matter" as "a matter that has commenced" and explains that "a matter continues to be pending through any appellate process until final disposition." Tenn. Sup. Ct. R. 10, Terminology. Because the judicial prohibition against

-7-

ex parte communications extends to cases that have not yet completed the appellate process, we can determine no reason why attorneys should not be similarly constrained. See Leslie W. Abramson, The Judicial Ethics of Ex Parte and Other Communications, 37 Hous. L. Rev. 1343, 1391 (2001) (noting that "a proceeding is 'pending' from the filing of the claim until the rendition of a final judgment" and that a lawyer may only communicate with a judge about the merits of the case "[o]nce the time for appeal has run"); Alex Rothrock, Ex Parte Communications with a Tribunal: From Both Sides, 29 Colo. Law. 55, 58 (2000) (noting that "[t]he 'pending or impending proceeding' limitation on prohibited *ex parte* communications has been extended to Rule 3.5(b)"); see also Restatement (Third) of The Law Governing Lawyers § 113(1) (2000) (prohibiting attorneys from "knowingly communicat[ing] ex parte with a judicial officer before whom a proceeding is pending concerning the matter, except as authorized by law") (emphasis added). Accordingly, Rule 3.5(b)'s proscription of ex parte communications extends "through any appellate process until final disposition." Tenn. Sup. Ct. R. 10, Terminology.

Here, Mr. Hancock emailed Judge Paine on September 28, 2009, and specifically referenced Judge Paine's denial of his fee application. Two days later, Mr. Hancock appealed the district court's summary affirmance to the United States Court of Appeals for the Sixth Circuit. Because the time in which Mr. Hancock could appeal the district court's ruling had not yet expired, the email was sent "during the proceeding" and constitutes an ex parte communication in violation of Rule 3.5(b). We therefore affirm the hearing panel's finding that Mr. Hancock violated Rule 3.5(b).

Although we have concluded that Mr. Hancock's email to Judge Paine constituted an ex parte communication, we must nevertheless address Mr. Hancock's alternative argument that he may not be disciplined for his email because the email was permitted by Rule 9003(a) of the Federal Rules of Bankruptcy Procedure. Rule 9003(a) states that "[e]xcept as otherwise permitted by applicable law, any examiner, any party in interest, and any attorney, accountant, or employee of a party in interest shall refrain from ex parte meetings and communications with the court concerning matters affecting a particular case or proceeding."

Mr. Hancock contends that federal precedents have interpreted Rule 9003(a) as only prohibiting communications made prior to the trial court's rendering a final decision. Mr. Hancock cites, for example, the United States Court of Appeals for the Fifth Circuit's decision in In re Texas Extrusion Corp., 844 F.2d 1142 (5th Cir. 1988). In that case, the bankruptcy judge verbally confirmed a joint plan of reorganization and asked counsel for one of the creditors to prepare proposed findings of fact and conclusions of law. Id. at 1149-50. The creditor's counsel submitted proposed findings of fact and conclusions of law directly to the bankruptcy judge and did not provide copies to the debtor's counsel. Id. at 1150. On appeal, the debtor argued that the creditor's counsel engaged in ex parte communications in violation of Bankruptcy Rule 9003(a). Id. at 1164. The Fifth Circuit reasoned, however, that "[t]he matter was no longer pending for purposes of these provisions prohibiting ex parte

contacts between counsel for a party and a judge in whose court that party's case is pending."
Id.

Notwithstanding the factual differences between Mr. Hancock's case and In re Texas Extrusion Corp., we do not view the Fifth Circuit's decision as controlling law in this disciplinary proceeding. As the advisory committee's notes to Rule 9003(a) make clear, "[Rule 9003(a)] is not a substitute for or limitation of any applicable canon of professional responsibility or judicial conduct." Fed. R. Bankr. P. 9003(a) advisory committee's note.

Pursuant to Tennessee Supreme Court Rule 8, RPC 8.5(a), Mr. Hancock is subject to this Court's disciplinary authority "regardless of where [his] conduct occur[red]." The applicable standards of professional conduct in this case therefore derive from Tennessee Supreme Court Rule 8, not Bankruptcy Rule 9003(a). See Tenn. Sup. Ct. R. 8, RPC 8.5(b)(1) (stating that the applicable rules of professional conduct "for conduct in connection with a matter pending before a tribunal[ are] the rules of the jurisdiction in which the tribunal sits, unless the rules of the tribunal provide otherwise."); see also Bankr. M.D. Tenn. R. 2091-1(a) ("The standards of professional conduct for an attorney who appears for any purpose [in the United States Bankruptcy Court for the Middle District of Tennessee] shall include the current rules of professional conduct adopted by the Supreme Court of the State of Tennessee.").[22] Accordingly, Mr. Hancock's preemption argument is without merit. We therefore affirm the hearing panel's finding that Mr. Hancock violated Rule 3.5(b).

## B. Conduct Intended to Disrupt a Tribunal

We must next determine whether the hearing panel erred by finding that Mr. Hancock's email constituted "conduct intended to disrupt a tribunal." Tenn. Sup. Ct. R. 8, RPC 3.5(e). Comment 5 to Rule 3.5(e) explains that an attorney's "function is to present evidence and argument so that the cause may be decided according to law." To that end, "[a]n advocate can present the cause, protect the record . . . , and preserve professional integrity" without "belligerence or theatrics." Tenn. Sup. Ct. R. 8, RPC 3.5 cmt. 5. An attorney's ethical obligation to avoid engaging in conduct intended to disrupt a tribunal extends to "any proceeding of a tribunal, including a deposition," Tenn. Sup. Ct. R. 8, RPC 3.5 cmt. 6, and the attorney's conduct "need not occur inside the courtroom to be disruptive to a tribunal." Ann. Mod. Rules Prof. Cond., Rule 3.5 (7th ed. 2011). But see Geoffrey C. Hazard, Jr. & W. William Hodes, The Law of Lawyering § 31.6, at 31-38 (3d ed. 2007) (opining that "[i]f a lawyer takes action outside a courtroom setting, it is virtually impossible that it could 'disrupt' a tribunal or be intended to do so").

---

[22] The Local Rules of Court for the United States Bankruptcy Court for the Middle District of Tennessee underwent comprehensive amendments that went into effect on December 1, 2013. Because the events described in this opinion preceded those amendments, all references to the Local Bankruptcy Rules in this opinion are to the Rules in effect at the time of Mr. Hancock's disciplinary hearing.

Based on the text of the rule and its comments, the scope of Rule 3.5(e) is clearly limited to those situations in which an attorney's actions interfere with a tribunal's ability to conduct its affairs. Although we recognize that Mr. Hancock was not involved in the ongoing litigation of Barnhill's bankruptcy action when he emailed Judge Paine, a "proceeding" was nevertheless pending because his time for appealing to the Sixth Circuit had not yet expired. As the hearing panel acknowledged, Mr. Hancock's email has a "threatening tone" and represents the "abusive [and] obstreperous conduct" that Rule 3.5(e) prohibits. Tenn. Sup. Ct. R. 3.5(e) cmt. 5. We therefore conclude that Mr. Hancock's violation of Rule 3.5(e) is supported by substantial and material evidence.[23]

## C. Statement Concerning Judge Paine's Integrity

We next address Mr. Hancock's challenge to Tennessee Supreme Court Rule 8, RPC 8.2(a)(1), which provides that "[a] lawyer shall not make a statement that the lawyer knows to be false or that is made with reckless disregard as to its truth or falsity concerning the qualifications or integrity of . . . a judge . . . ." Mr. Hancock maintains that Rule 8.2(a)(1) is a facially unconstitutional, content-based restriction on his right to free speech under the United States and Tennessee Constitutions. See U.S. Const. amend. I ("Congress shall make no law . . . abridging the freedom of speech . . . ."); Tenn. Const. art. 1, § 19 (stating in part that "[t]he free communication of thoughts and opinions, is one of the invaluable rights of man, and every citizen may freely speak, write, and print on any subject"); see also S. Living, Inc. v. Celauro, 789 S.W.2d 251, 253 (Tenn. 1990) (recognizing that Article I, Section 19 of the Tennessee Constitution "should be construed to have a scope at least as broad" as that of the First Amendment to the United States Constitution). Specifically, Mr. Hancock borrows from the law of defamation and argues that Rule 8.2(a)(1) violates the First Amendment because it does not require the Board to prove that the attorney "published" the false statement about the judge's integrity or qualifications. Mr. Hancock also contends that Rule 8.2(a)(1) is unconstitutional as applied to his case because the Board did not prove that his statements in the email were "actually false."

---

[23] Mr. Hancock also asserts in his brief that Rule 3.5(e) is unconstitutional. Mr. Hancock cites no authority for this proposition and provides no rationale for his conclusion. We therefore decline to address this issue. But see Gentile v. State Bar of Nev., 501 U.S. 1030, 1081-82 (1991) (O'Connor, J., concurring) (stating that attorneys "may legitimately be subject to ethical precepts that keep them from engaging in what otherwise might be constitutionally protected speech"); Bd. of Prof'l Responsibility v. Slavin, 145 S.W.3d 538, 549 (Tenn. 2004) (recognizing that attorneys' First Amendment rights "are often subordinated to other interests inherent in the judicial setting"); Ramsey v. Bd. of Prof'l Responsibility, 771 S.W.2d 116, 121 (Tenn. 1989) ("A lawyer has every right to criticize court proceedings and the judges and courts of this State after a case is concluded, so long as the criticisms are made in good faith with no intent or design to willfully or maliciously misrepresent those persons and institutions or to bring them into disrepute.") (emphasis added).

It is well settled that this Court will decide constitutional issues only when doing so is "absolutely necessary for [the] determination of the case and the rights of the parties." Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995). We therefore resolve appeals on non-constitutional grounds whenever it is possible to do so. Keough v. State, 356 S.W.3d 366, 371 (Tenn. 2011). Because we conclude that Rule 8.2 implicitly requires proof of publication, we decline to decide Mr. Hancock's constitutional argument.

Rule of Professional Conduct 8.2 prohibits an attorney from making false statements concerning the integrity or qualifications of a judge because these statements "unfairly undermine public confidence in the administration of justice." Tenn. Sup. Ct. R. 8, RPC 8.2 cmt. 1; Ramsey, 771 S.W.2d at 121 (describing the harm that results from a lawyer's false statements about a judge as being the "dimin[ution of] the confidence of the public in our courts"). By the same token, Rule 8.2 is "not designed to shield judges from unpleasant or offensive criticism." Office of Disciplinary Counsel v. Gardner, 793 N.E.2d 425, 432 (Ohio 2003); see also In re Green, 11 P.3d 1078, 1087 (Colo. 2000) (recognizing a "reduced governmental interest" when the attorney's criticisms of the judge were communicated only to the judge and opposing counsel); In re Wilkins, 777 N.E.2d 714, 718 (Ind. 2002) (recognizing "the state's interest in preserving the public's confidence in the judicial system"); In re Holtzman, 577 N.E.2d 30, 33 (N.Y. 1991) (stating that an attorney's public statements to media about a trial judge "undermine[d] public confidence in the judicial system"); Tobin A. Sparling, Attorneys Un-Muzzled: Does Republican Party of Minnesota v. White Invalidate the Use of an Objective Standard in Cases Involving Extrajudicial Speech Criticizing a Judge?, 30 Hamline L. Rev. 59, 70 (2007) (characterizing courts' primary justification for sanctioning attorneys for statements about judges as being that "[t]he judicial system suffers when [an attorney's] false criticism diminishes public confidence in its effectiveness and impartiality"). But see In re Evans, 801 F.2d 703, 706 (4th Cir. 1986) (disbarring an attorney from federal court for statements made in a letter to a judge that were "undignified, discourteous, and degrading" although the letter was sent to only the subject judge).

This Court has long recognized that attorneys are in the best position to know the "character and efficiency of our judges." In re Hickey, 258 S.W. 417, 429 (Tenn. 1923). Because attorneys are among the most credible of witnesses on the qualifications of judges, the public routinely relies on attorneys' assessments when deciding whether to vote for a particular candidate seeking judicial office. Tenn. Sup. Ct. R. 8, RPC 8.2 cmt. 1; see also In re Green, 11 P.3d at 1085 (acknowledging that public criticism of judges by attorneys is an important public interest because many judges in Colorado are subject to retention elections). Rule 8.2 therefore encourages attorneys to provide "honest and candid opinions" for the public's benefit. Tenn. Sup. Ct. R. 8, RPC 8.2 cmt 1.

Given the purpose of Rule 8.2(a)(1) and the harm that it seeks to prevent, we conclude that an attorney may be disciplined pursuant to Rule 8.2 only if the false statement is

communicated to a third party. See Restatement (Third) of The Law Governing Lawyers § 114 (providing that "[a] lawyer may not knowingly or recklessly make publicly a false statement of fact concerning the qualifications or integrity of an incumbent of a judicial office") (emphasis added); see also id. at cmt. b ("Because the purpose of [Section 114] is to protect the public reputation of the judicial and public legal office, there is less reason for concern with statements made by a lawyer in private conversation. Such conversation is not included within the rule."). We are therefore unable to conclude that Mr. Hancock's email falls within the scope of Rule 8.2(a)(1) because the record lacks any indication that Mr. Hancock sent the email to anyone other than Judge Paine.[24] Although we agree with the hearing panel's conclusion that Mr. Hancock's email was "extremely disrespectful," we cannot agree that it is sanctionable under Rule 8.2(a)(1). We therefore reverse the hearing panel's finding that Mr. Hancock violated Rule 8.2(a)(1).

### D. Chancery Court's Modification of the Judgment

We next address the chancery court's modification of the judgment to include violations of Rules of Professional Conduct 3.2, 3.4(c), 8.4(a), and 8.4(d) arising out of Mr. Hancock's late-filed and noncompliant briefs in the district court. The chancery court concluded that because the hearing panel found as a factual matter that Mr. Hancock's revised brief failed to comply with the district court's orders and with the local rules, the hearing panel's failure to find rule violations for these actions constituted "oversight and . . . render[ed] the decision of the hearing panel arbitrary." See Tenn. Sup. Ct. R. 9, § 1.3 (permitting the court to reverse or modify the hearing panel's decision if the decision is, among other things, "arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted discretion"). Although we agree that the hearing panel's judgment does not include any mention of the alleged violations arising from Mr. Hancock's briefs in the district court, we disagree with the chancery court's conclusion that the absence of findings renders the hearing panel's decision arbitrary.

A decision is arbitrary if it "disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." City of Memphis v. Civil Serv. Comm'n, 216 S.W.3d 311, 316 (Tenn. 2007) (quoting Jackson

---

[24] Contrary to Justice Clark's assertions, the critical issue in this case is not whether Mr. Hancock published an email to persons other than Judge Paine. Instead, our analysis is limited to the email for which he was found in violation of Rule 8.2(a)(1). In its Memorandum Opinion, the hearing panel quoted extensively from the body of Mr. Hancock's email to Judge Paine. It did not, however, reference Mr. Hancock's September 11, 2009 email to his landlords. Furthermore, aside from Mr. Hancock's request that the attachments be admitted simultaneously with his email to Judge Paine, none of the testimony presented at the disciplinary hearing concerned the attachments. We therefore disagree with Justice Clark's conclusion that substantial and material evidence supports the hearing panel's finding that Mr. Hancock violated Rule 8.2(a)(1).

<u>Mobilphone Co. v. Tenn. Pub. Serv. Comm'n</u>, 876 S.W.2d 106, 110-11 (Tenn. Ct. App. 1993)). Based on our review of the hearing panel's memorandum opinion and its written judgment, we are unable to conclude that the hearing panel made any "finding[], inference[], conclusion[] or decision[]" with respect to Mr. Hancock's alleged violations of Rules 3.2 and 3.4(c).[25] It is well settled that the reviewing court is without authority to amend, modify, or reverse the judgment of the hearing panel unless the appealing party establishes one of the enumerated circumstances in section 1.3. <u>Hyman v. Board of Prof'l Responsibility</u>, No. E2012-02091-SC-R3-BP, ___ S.W.3d ___, ___, 2014 WL 1280265, at *7 (Tenn. Mar. 31, 2014). As its basis for modifying the hearing panel's judgment, the chancery court stated that "the violations alleged would not justify the imposition of additional sanctions and this matter needs to be concluded." Neither of these justifications expressed by the chancery court are among those enumerated in Tennessee Supreme Court Rule 9, section 1.3.

As Mr. Hancock notes in his briefs filed in this Court, the hearing panel's silence concerning his alleged violations of Rules 3.2, 3.4(c), 8.4(a), and 8.4(d) may reflect its intent to dismiss these allegations of misconduct. Perhaps the panel was persuaded by his testimony that a resurgence of mental illness during the time of his appeal to the district court precluded him from complying with the court's orders. <u>See</u> Tenn. Sup. Ct. R. 8, RPC 3.2 cmt. 1 (recognizing that "there will be occasions when a lawyer may properly seek a postponement for personal reasons, such as illness"); <u>id.</u>, RPC 3.4(c) (restricting the reach of the rule to situations in which the lawyer "<u>knowingly</u> disobey[s] an obligation under the rules of a tribunal") (emphasis added); <u>id.</u>, RPC 8.4 cmt. 9 (stating in part that "[f]ailure to comply with a court order is not a disciplinary offense . . . when it does not evidence disrespect for the law . . . because the lawyer is unable to comply with the order").

Conversely, the panel may have agreed with the Board's position that Mr. Hancock failed to prove that his mental illness prevented him from complying with his ethical obligations and that his testimony concerning his mental illness is merely a mitigating factor for the panel to consider when determining the appropriate sanction to impose. <u>See</u> ABA Standard 9.22(c) (listing the lawyer's "personal or emotional problems" as a mitigating factor to punishment). The parties' arguments raise legitimate questions about the credibility of Mr. Hancock's testimony and the weight of the evidence adduced at the hearing. To that end, the hearing panel could have resolved these issues in favor of either party. The point remains, however, that the hearing panel did not resolve these issues, and without a specific finding,

---

[25] In fact, the only mention of these rules appears in the hearing panel's order, which states, "Mr. Hancock did not violate Rules 3.2 (expediting litigation); 3.4(c) (fairness to opposing counsel); 3.5(e) (impartiality and decorum of the tribunal); and 8.4(a) and (d) (misconduct) by failing to comply with Bankruptcy rules and Orders." By connecting the rules of professional conduct with the "Bankruptcy rules and Orders," it is clear that this finding relates only to Mr. Hancock's actions while he was actively engaged in the litigation of Barnhill's bankruptcy. It does not, however, concern the briefs that Mr. Hancock filed in the district court nor does it address Mr. Hancock's actions or inactions during his appeal to that court.

the chancery court could only speculate as to the hearing panel's intended conclusion. Consequently, the chancery court substituted its judgment for that of the hearing panel, which is expressly prohibited by Tennessee Supreme Court Rule 9, section 1.3. Accordingly, the chancery court erred by modifying the hearing panel's judgment.

The Board bears the burden of proof in attorney disciplinary proceedings. See Tenn. Sup. Ct. R. 9, § 8.2 ("In hearings on formal charges of misconduct, Disciplinary Counsel must prove the case by a preponderance of the evidence."). If the hearing panel fails to make findings concerning a specific rule violation, it is incumbent on Disciplinary Counsel to address the issue before a petition for certiorari is filed and the hearing panel is without jurisdiction to modify its judgment. In this case, for example, the Board could have raised any alleged omissions by the hearing panel in the form of a motion to alter or amend the hearing panel's judgment pursuant to Tennessee Rule of Civil Procedure 59. See Tenn. Sup. Ct. R. 9, § 23.2 (stating in part that "the Tennessee Rules of Civil Procedure . . . apply in disciplinary cases"). Due to the limited standard of review on appeal, we can only construe the hearing panel's silence as a dismissal of the allegations of misconduct concerning Mr. Hancock's briefs filed in the district court.

## E. Appropriate Sanction

We must now determine whether the thirty-day suspension imposed by the hearing panel is excessive. When determining the appropriate sanction, this Court looks to the ABA Standards as our "guidepost[s]." Lockett v. Bd. of Prof'l Responsibility, 380 S.W.3d 19, 26 (Tenn. 2012); see also Tenn. Sup. Ct. R. 9, § 8.4. Application of the ABA Standards requires us to consider "the duty violated; . . . the lawyer's mental state; . . . the potential or actual injury caused by the lawyer's misconduct; and . . . the existence of aggravating or mitigating factors." ABA Standard 3.0; see also Lockett, 380 S.W.3d at 26.

In this case, Mr. Hancock's misconduct represents a breach of his duty to the legal system. See ABA Standard 6.3 (entitled "Improper Communications with Individuals in the Legal System" and stating in part that "the following sanctions are generally appropriate in cases involving attempts to influence a judge"); see also ABA Standards app. 1 (connecting the presumptive sanctions of Standard 6.3 to violations of Rule 3.5). Accordingly, we look to ABA Standard 6.32, which states that "[s]uspension is generally appropriate when a lawyer engages in communication with an individual in the legal system when the lawyer knows that such communication is improper, and causes injury or potential injury to a party or causes interference or potential interference with the outcome of the legal proceeding." Because Mr. Hancock emailed Judge Paine prior to perfecting his appeal to the Sixth Circuit, his email was sent while the Barnhill's matter was still pending. Mr. Hancock acknowledged at the hearing that he should not have sent the email but did so out of frustration. We are therefore convinced that ABA Standard 6.32's presumptive sanction of suspension is appropriate in this case.

-14-

Pursuant to Tennessee Supreme Court Rule 9, section 4.2, "No suspension shall be ordered for a specific period less than thirty days or in excess of five years." The length of an attorney's suspension, however, depends in large part on the aggravating and mitigating circumstances expressed in ABA Standard 9.0. See ABA Standard 9.1 ("After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose."). Here, the hearing panel found as aggravating factors Mr. Hancock's multiple offenses, his prior disciplinary history, and his substantial experience in the practice of law. See ABA Standard 9.22. In mitigation, however, the hearing panel found that Mr. Hancock was experiencing personal or emotional problems when his misconduct occurred. See ABA Standard 9.32(c). On balance, we agree with the hearing panel's conclusion that the aggravating and mitigating circumstances justify a thirty-day suspension. We therefore affirm Mr. Hancock's suspension from the practice of law for thirty days.

## III. Conclusion

We reverse the chancery court's modification of the hearing panel's judgment. We also reverse the hearing panel's finding that Mr. Hancock violated Tennessee Supreme Court Rule 8, RPC 8.2(a)(1). We affirm the judgments of the chancery court and the hearing panel in all other respects and affirm Mr. Hancock's suspension from the practice of law for thirty days. Costs of this appeal are taxed one-half to William Caldwell Hancock and his surety and one-half to the Board of Professional Responsibility of the Supreme Court of Tennessee, for all of which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE