FILED

02/14/2020

Clerk of the
Appellate Courts

IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 5, 2019 Session

## BOARD OF PROFESSIONAL RESPONSIBILITY v. JAMES S. MACDONALD

**Knox County Chancery Court, No. 194600-1**
**Jerri Bryant, Chancellor**
**BPR Docket 2016-2640-2-WM**

_____

### No. E2018-01699-SC-R3-BP

_____

The Board of Professional Responsibility ("the Board") filed a Petition for Discipline against James MacDonald ("Attorney") based on a single complaint arising from his representation of Michael Huddleston. A hearing panel ("the Panel") was appointed and, after an evidentiary hearing, the Panel dismissed the Petition for Discipline and concluded that the Board "failed to sustain its burden of proving, by a preponderance of the evidence, that Attorney violated" any Rules of Professional Conduct ("RPC"). Thereafter, the Board filed a petition for review of the Panel's decision in the Knox County Chancery Court. The chancery court reversed the Panel's dismissal of all six rule violations and determined that the Panel's conclusions were arbitrary and capricious and unsupported by the evidence. In addition, the chancery court held that the Panel abused its discretion by applying an incorrect legal standard. The chancery court found that Attorney violated all six rules alleged in the Board's petition and imposed a public censure as punishment. Attorney sought review in this Court, arguing that the chancery court incorrectly substituted its own judgment for that of the Panel's and abused its discretion. Upon review of the record and applicable law, we reverse the chancery court's conclusion that Attorney violated RPC 3.3(b) and (c), 3.4(a) and (b), and 8.4(a), and we reinstate the Panel's dismissal of those allegations. Additionally, we hold that the chancery court was without authority to conclude that Attorney violated RPC 8.4(c), and this Court must treat the Panel's failure to make a conclusion as a dismissal of the allegation. Therefore, the Petition for Discipline against Attorney is dismissed in its entirety.

JEFFREY S. BIVINS, C.J., delivered the opinion of the court, in which CORNELIA A. CLARK, SHARON G. LEE, HOLLY KIRBY, AND ROGER A. PAGE, JJ., joined.

Gregory Brown, Knoxville, Tennessee, for the appellant, James S. MacDonald.

Jerry D. Morgan, Brentwood, Tennessee, for the appellee, Board of Professional Responsibility.

## OPINION

## Factual and Procedural Background

Attorney has practiced law in Tennessee since 1974 and has represented clients in a variety of matters, ranging from individual criminal and civil defense to in-house counsel matters for a publicly held company. In his over four-decade career as an attorney, he has no prior disciplinary matters on his record. At all times relevant to this attorney-discipline matter, Attorney represented Mr. Huddleston, the plaintiff, in a dispute ("H&H Properties Dispute") against his former business partner, Kenneth Harper at H&H Properties.[1]

In May of 2016, Lewis Howard, counsel for Mr. Harper in the H&H Properties Dispute, filed a complaint with the Board against Attorney arising out of a motion hearing in the dispute. On October 6, 2016, the Board filed a Petition for Discipline against Attorney alleging that he "offered, and used, evidence known by him to be false," "unlawfully altered evidence[] and falsified evidence," and "engaged in conduct involving deceit and/or misrepresentation," in violation of RPC 3.3(b) and (c)[2] (Candor

---

[1] The underlying dispute also involved a claim by Mr. Huddleston against Jerry Hurst, the person to whom Mr. Huddleston sold his partnership interest. Mr. Hurst, however, was not involved in this attorney-discipline matter, and we find it unnecessary to discuss his involvement in the underlying dispute.

[2] Tenn. Sup. Ct. R. 8, RPC 3.3, section (b) states that "[a] lawyer shall not offer evidence the lawyer knows to be false, . . ." and section (c) states that "[a] lawyer shall not affirm the validity of, or otherwise use, any evidence the lawyer knows to be false."

toward the Tribunal), 3.4(a) and (b)[3] (Opportunity and Fairness to Opposing Party and Counsel), and 8.4(a) and (c)[4] (Misconduct). The parties appeared before the Panel on July 17, 2017, and the following evidence was adduced.

*H&H Properties Dispute[5]*

Attorney agreed to represent Mr. Huddleston starting in 2013 when a dispute arose regarding the negotiation and sale of Mr. Huddleston's partnership interest in H&H Properties. At issue in the dispute was the value of Mr. Huddleston's interest in a building the partnership owned. Specifically, Mr. Huddleston alleged that Mr. Harper misrepresented the status of a pending insurance claim on the building, causing Mr. Huddleston not to receive the full value of his partnership interest during the sale.

---

[3] Tenn. Sup. Ct. R. 8, RPC 3.4 provides:

A lawyer shall not:

(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy, or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act; or

(b) falsify evidence, counsel or assist a witness to offer false or misleading testimony;[ ]

. . . .

[4] Tenn. Sup. Ct. R. 8, RPC 8.4 provides:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

. . .

(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

. . . .

[5] The details of the underlying litigation, and a full recitation of the facts, can be found in the Court of Appeals' opinion from June 30, 2015. See Huddleston v. Harper, No. E2014-01174-COA-R3-CV, 2015 WL 3964791, at *2–3 (Tenn. Ct. App. June 30, 2015).

In support of his claim, Mr. Huddleston submitted an email drafted and sent by Mr. Harper on December 10, 2009, when the then-partners were contemplating selling the building to a third party, Mel Rachal, part owner of Knoxville Stamping & Assembly ("KSA"). The email discussed the purchase offer and included an attachment ("the Letter") with a counter-offer for Mr. Rachal. When Mr. Harper sent the initial email on December 10, it was for Mr. Huddleston's approval, and the Letter did not contain a signature. The Letter had pre-printed language: "Sincerely, H&H Properties[,]" with room to add a written signature. Mr. Huddleston forwarded the December 10 email and the Letter to Attorney on August 21, 2013, and stated: "Here is one interesting letter that was drafted and sent by [Mr. Harper] to his then partner, Mel Rachal at KSA."

According to Mr. Huddleston, the contents of the Letter contradicted Mr. Harper's position in the H&H Properties Dispute, so Attorney submitted a copy of the December 10 email and the Letter, which contained no signature, to the opposing parties in 2014 with sworn discovery disclosures.

Approximately two years later in the proceedings, Mr. Harper filed a motion for summary judgment. In response, Attorney submitted an affidavit from his client with the December 10 email and the Letter as Exhibit 1. Before submitting the affidavit and exhibit to the court, Attorney directed his secretary to add "/s/ Kenneth Harper" to the Letter by typewriter in the signature block. The addition to the Letter appeared slightly off center, was of a different font style, and covered other language on the document. Mr. Huddleston reviewed the affidavit and approved the addition of "/s/ Kenneth Harper" to the Letter as consistent with his belief that Mr. Harper had signed and sent the Letter to Mr. Rachal. In the affidavit, Mr. Huddleston attributed the Letter to Mr. Harper.[6]

On May 9, 2016, the trial court held a hearing on the motion for summary judgment and opposing counsel, Mr. Howard, pointed out that "/s/ Kenneth Harper" had been added to the Letter, which was not present on the previous version of the Letter that he received during discovery. (Admin R. 1 p. 58). Mr. Howard explained:

> COUNSEL: But what's more disturbing about that, your Honor, when I saw this letter attached as exhibit 1 to the affidavit, I thought, "I've seen that letter before." And sure enough, I saw that letter two years earlier

---

[6] The affidavit referred to the Letter as "Mr. Harper's letter." During Mr. Huddleston's deposition, he testified that Mr. Harper wrote and signed the Letter. He also testified that when he reviewed the affidavit, before submitting it to the court, he understood that the representations in his affidavit and Exhibit 1 implied that Mr. Harper wrote and signed the Letter.

- 4 -

attached as an exhibit to sworn discovery responses of Mr. Huddleston; again, Collective 1.  And the difference, your Honor – may I approach?

COURT: Yes, sir.

COUNSEL: The difference is, this is what we got two years ago in discovery.  This is what was attached to Mr. Huddleston's affidavit, which someone has affixed by a typewriter, apparently, a purported electronic signature of Mr. Harper.

. . .

[I]t certainly appears that Mr. Huddleston is making an effort to alter that document in connection with the pleadings that he's filing before this Court.

After Mr. Howard addressed the court, Attorney brought attention back to the addition of "/s/ Kenneth Harper" and explained that "the point about typing in the name was[]. . . to make sure that the [c]ourt knew this was something that Mr. Harper did." The trial judge expressed his concerns in open court:

COURT: Well, I don't think it's uninteresting that we – that somebody has – it may not affect what I do today, but it's interesting that somebody added it.

ATTORNEY: I did, your Honor.

COURT: Why in the world did you do that?

ATTORNEY: So it would be clear who did it.

COURT: I need to see the original document, unaltered, period.

ATTORNEY: Well, you do have the affidavit.

COURT: I'm not saying it makes any difference today, but I don't think I have ever seen that in the practice of law, where somebody has taken a document that's been produced and they modify it, add something to it.

- 5 -

ATTORNEY: We produced it, your Honor.  The only reason they have it, your Honor, is because we gave it to them.

COURT: I understand that, but why in the world would you add something to it?

ATTORNEY: To make it clear to the Court who signed it.

COURT: You don't – what's clear is on the face of the document as it originally existed.  You don't add things to it.  Don't do it again in my Court.

ATTORNEY: I won't.

COURT: Do you understand that?

ATTORNEY: I do, your Honor.  The point is, we got a copy of it that was unsigned, but Mr. Harper signed it.

COURT: That's not a reason for the attorney to go back and add something to it that wasn't there.

ATTORNEY: I apologize to the Court, your Honor.  I thought it was a benefit to the Court to clarify things, and I apologize.

The trial judge made no further comments about the matter and did not refer the matter to the Board.  Mr. Howard filed a complaint with the Board days later, and the Panel convened on July 17, 2017, for an evidentiary hearing.

*Testimony before the Panel*

The Board's proof consisted of various documents, including the December 10 email, the Letter without a signature, and the Letter with the addition of "/s/ Kenneth Harper."  The Board also solicited testimony from Mr. Harper and Attorney.  Mr. Harper stated that "[he] drafted and sent [the Letter] to Mr. Huddleston . . . for discussion purposes only[,]" but the ideas in the Letter were a combination of his and Mr. Huddleston's, not his alone.  He did not recall delivering a final, signed copy to Mr. Rachal, and was "99.9 percent certain[]" that he did not sign the Letter.  Furthermore, Mr.

- 6 -

Harper explained that if he had sent the letter, his typical business practice would have been to "document it, sign it, make copies, [and] keep copies in [his] file," and, in this case, he had no such record of the Letter.

Next, Attorney testified and confirmed that he received a copy of the Letter via email from Mr. Huddleston. Attorney knew that the Letter originated as a Word document attached to the email, and that when the Letter was attached to the December 10 email, it was unsigned. However, through communication with Mr. Huddleston, Attorney's understanding was that Mr. Huddleston approved the Letter to be sent, and "the original had been signed and walked down the hallway to . . . Mr. Rachal by Mr. Harper."

Additionally, Attorney admitted that he instructed his secretary to add "/s/Kenneth Harper" to the Letter as Exhibit 1, but did so only under the belief that it functioned as a conformed signature—"a typed substitution for a signature . . . being used with the understanding that the original version of the document contains one or more authentic original signatures"—not an electronic signature. Neither Attorney nor his client obtained a copy of the Letter with Mr. Harper's actual signature on it at any point during the litigation. Attorney was aware that when he submitted his client's affidavit and the Letter with the conformed signature, he was expressly and impliedly representing to the court that Mr. Harper had authored *and* signed the Letter.

Even though Attorney had never seen a version of the Letter bearing an actual signature, he explained:

> ATTORNEY: . . . I wanted to make sure that[,] faced with the volume of paper[,] the [c]ourt understood the first time it saw this very important contradictory letter filed by Mr. - - prepared by Mr. Harper that the [c]ourt understood that this was - - that H&H Properties was, for purposes of this motion, Ken Harper. Ken Harper was the one who prepared this letter and got it to Mel Rachal.

According to Attorney, whether Mr. Harper actually signed the Letter was not essential to the litigation. Rather, it was important to show that Mr. Harper authored the Letter and that the ideas in the Letter could be attributed to Mr. Harper. At the time he submitted the exhibit, Attorney did not believe there was a dispute as to who drafted or signed the Letter. Attorney turned over the Letter without the conformed signature during discovery and then later with the conformed signature before the motion hearing and never received a response from Mr. Howard to indicate a dispute as to the issues. Attorney was clear

with the Panel that if he had any doubt as to whether Mr. Harper had signed the Letter, he would not have added the conformed signature

Finally, Attorney admitted that he failed to notify the court in his pleadings about the addition of the conformed signature, and it was not until after Mr. Howard brought it to the trial judge's attention that Attorney addressed the conformed signature himself. However, Attorney reiterated that he openly addressed the issue during his own argument and was candid with the trial court as to who added the conformed signature and his purpose for doing so.

At the conclusion of the Board's proof, Attorney moved to dismiss the Board's case, arguing that the Board failed to prove by a preponderance of the evidence that Attorney knowingly violated any RPC or made any misrepresentations to the court. The Board responded that it "[did] not contend for a minute that Attorney intended or tried to put one over on the [c]ourt[,] or that from some dark motive he tried to gain an advantage . . . ." But, the Board argued, what Attorney did was "inappropriate."

The Board then made the following statements in response to Panel questioning:

PANEL: . . . Is there any disagreement with the fact that [Attorney] added a conformed signature to this document that was submitted to the [c]ourt?

BOARD: That's undisputed. He admits he did it.

PANEL: So there is no - - I don't think the [B]oard disagrees with the various definitions of "confirmed signature" as to the signature has been added because the original was signed.

BOARD: Correct

. . .

PANEL: I think it's undisputed that [Attorney's] client said, "Yes, this was his practice. He was 25 feet away. He signed it." You know because what I'm trying to figure out is if he knowingly presented something that he knew was false.

- 8 -

That's where I'm trying to get past. He knew the original was attached to an e-mail, and it wasn't signed. And I think it's clear that his client told him that it was signed.

Is there anything else the [B]oard can point to me, at least, that says, "Yeah, but he had a red flag saying that it wasn't signed?"

BOARD: No . . .

The Panel dismissed Attorney's motion and went on to hear additional testimony.

Mr. Huddleston's video deposition was played in which he confirmed that he received the December 10 email from Mr. Harper and approved the Letter to be sent to Mr. Rachal. Mr. Huddleston believed Mr. Harper printed, signed, and walked the copy over to Mr. Rachal's desk, as was his "standard practice" during their partnership. Mr. Huddleston stated, "[Mr. Harper] always signed his letters as 'Ken.' So[,] . . . I feel like I - - I saw the letter. I just don't have a copy of it." In addition, while Mr. Huddleston was unable to produce an original, signed copy of the Letter, he was able to turn over a reply email from Mr. Rachal sent on December 31, 2009, two weeks after Mr. Huddleston believed he approved the Letter to be sent. In the reply email, Mr. Rachal proposed another counter-offer to the purchase option. Mr. Huddleston believed this confirmed not only that Mr. Harper printed and signed the Letter, but Mr. Rachal also received and responded to the Letter two weeks later.

Furthermore, Mr. Huddleston explained what he told Attorney regarding the Letter:

QUESTION: Okay. So when you reviewed the affidavit before signing it, did you - - did you see that ["/s/ Kenneth Harper"] was added?

ANSWER: Yes

. . .

QUESTION: Did that signify to you that the [L]etter had been signed by Ken Harper?

ANSWER: Yes.

- 9 -

QUESTION: That's what you understood it to mean, correct?

ANSWER: Right. As we had discussed, yes. [Attorney] and I had discussed that. I told him it was signed by Ken Harper.

QUESTION: And you believed that to be true?

ANSWER: Yes

QUESTION: At the time you knew it to be true?

ANSWER: I did.

QUESTION: And you had told that to [Attorney], correct?

ANSWER: I had, yes.

QUESTION: Did you understand that [Attorney] would be providing your affidavit to the court implicitly representing that that [L]etter had been signed by Ken Harper?

ANSWER: Yes.

After Mr. Huddleston's deposition, Mr. Howard confirmed that he received a copy of the December 10 email and the Letter without the conformed signature as part of discovery at the beginning of the litigation. Mr. Howard did not dispute the fact that his client drafted the Letter.

The Panel then heard from two expert witnesses. First, Thomas Scott, a prior chair of the Tennessee Board of Professional Responsibility, opined that Attorney had not violated RPC 3.3, 3.4, or 8.4 because these particular rules required a knowing violation, and Attorney did not have the requisite intent. If a violation was to be found, Mr. Scott suggested, it would be due to Attorney's negligence, and a private reprimand would be the only appropriate sanction.

Next, Lucian Pera, who, at the time, was the president of the Tennessee Bar Association, opined that Attorney's annotation was not falsifying evidence. Rather, using a conformed signature merely conveyed what Attorney's client already disclosed in the language of the affidavit. Further, Mr. Pera stated that Attorney's use of a conformed

signature was not deceitful or a misrepresentation of information in the underlying dispute.  Mr. Pera agreed that public discipline was not appropriate and that Attorney had every reason to believe the conformed signature conveyed a true statement and had no reason to believe it was false information.

Prior to the hearing before the Panel, the Board moved to exclude the testimony of these two expert witnesses, arguing that their testimony inappropriately made ultimate conclusions of law that were solely meant for the Panel.  The Panel denied the motion but in its Findings of Fact stated that it "independently applied the facts to the law in this case and [did] not give[] any deference to the specific expert testimony presented by Mr. Scott and Mr. Pera . . . ."

*The Hearing Panel's Findings*

Following the hearing, the Panel found that Attorney was a credible witness with a "seemingly unblemished career."  Additionally, the Panel highlighted certain facts that were not in dispute: (1) Mr. Huddleston received the Letter as an attachment to an email from Mr. Harper; (2) the Letter did not contain a signature when attached to the email; (3) Attorney added the conformed signature by typewriter to the Letter by printing out the attachment to the email; (4) Attorney turned over a copy of the Letter without the conformed signature to Mr. Howard in 2014; and (5) Attorney later submitted the Letter with the conformed signature as an exhibit to his client's affidavit.

The Panel also found it "irrelevant whether or not Mr. Harper actually authored and/or signed the [L]etter . . . [,]" and that the "relevant inquiry [wa]s whether or not [Attorney] had a good[-]faith basis to believe that Mr. Harper drafted and signed the . . . [L]etter."  Further, the Panel found that the parties agreed to the definition of a conformed signature: "a typed substitution for a signature [that] is being used with the understanding that the original version of the document contains one or more authentic signatures."  Additionally, the Board "conceded at the hearing that '/s/Kenneth Harper' was a conformed signature[,]" and the Panel found that the "annotation of the . . . [L]etter did not constitute false evidence."

The Panel found, regarding the Letter specifically, Attorney "had been told by his client, Mr. Huddleston, that [the Letter] had been drafted, signed, and delivered to Mr. Rachal by Mr. Harper, and that [Attorney] reasonably believed those facts to be true." (Paragraph 22).  However, the Panel also found that "[n]either Mr. Huddleston, Mr. Harper, nor [Attorney] ha[d] seen a copy of the [L]etter signed by Mr. Harper[,]" and no

- 11 -

person actually told Attorney that he had seen the Letter bearing Mr. Harper's signature. The Panel found that "Attorney presumed that Mr. Harper had signed the [L]etter."

Regarding Attorney's mindset, the Panel found that even though Attorney "had never seen the signed [L]etter, he held a good faith belief Mr. Harper had authored and signed the [L]etter." Based on Attorney's own testimony, the Panel found that his "purpose in adding the conformed signature to the [L]etter was to show that the [L]etter was authored by Mr. Harper . . . ." However, "[b]y adding the conformed signature to the [L]etter, [Attorney] intended to communicate to the court that Mr. Harper had in fact signed the original." Additionally, the Panel made four separate findings that the Board failed to produce any evidence that Attorney received information that proved he did in fact know his client's statements about the Letter were false or that should have led him to believe that his client's statements about the Letter were false.

Finally, the Panel addressed Attorney's candor with the court and stated that, on one hand, Attorney failed to include an explanation or notification about the conformed signature in his pleadings, and even failed to bring it to the court's attention until opposing counsel mentioned it during argument at the motion hearing. On the other hand, once the conformed signature was mentioned, Attorney was forthcoming and candid with the court and also "displayed a cooperative attitude" toward the Board during its proceedings. The Panel also took note of the fact that Attorney received an open admonishment from the trial court judge at the motion hearing.

Based on these factual findings, the Panel concluded that the Board failed to prove that Attorney had violated RPC 3.3(b) or (c), both of which require that the attorney know the evidence to be false. The Panel concluded that Attorney did not know or have reason to know the representations in the affidavit to be false. (Admin R 2 at 139-40). The Panel reasoned that Attorney did not have the requisite level of knowledge "due to his good[-]faith belief that the original letter had been signed, and this good[-]faith belief [was] supported by the fact that the Board conceded that the addition of '/s/Kenneth Harper' was a conformed signature." Therefore, the Panel dismissed the allegations regarding RPC 3.3(b) and (c).

With regard to RPC 3.4(a), which prohibits lawyers from unlawfully obstructing, altering, destroying, or concealing another party's access to evidence, the Panel concluded that "as a matter of law . . . the addition of a conformed signature, with the understanding that a document has in fact been signed, is not 'unlawful.'" Additionally, the Panel concluded that because both parties agreed the Letter was turned over to

opposing counsel without the conformed signature, there was no evidence to show "that [Attorney] obstructed anyone's access to evidence," or unlawfully altered evidence.

Similarly, the Panel concluded that there was insufficient evidence to prove a violation of RPC 3.4(b), which prohibits lawyers from falsifying evidence, because "[t]here is no basis . . . to conclude that the use of a conformed signature, or of a conformed copy, is unlawful or qualifies as 'falsification of evidence' where the attorney has reason to believe that the original was signed." In this case, the Panel found that it was undisputed that Mr. Huddleston told Attorney the Letter was signed, and Attorney's belief that the original copy had been signed and delivered was reasonable. Therefore, the Panel dismissed the allegations regarding RPC 3.4(a) and (b).

Next, the Panel concluded that the Board failed to prove any criminal act on behalf of Attorney, so there was no violation of RPC 8.4(b).[7] The Panel did not make a conclusion as to RPC 8.4(c) and failed to mention that allegation entirely in its judgment. Lastly, the Panel determined that RPC 8.4(a) was inapplicable because the Board failed to sustain its burden of proof as to any violation of the rules and RPC 8.4(a) only applies when there has been an attempt or violation of another rule. The Panel reasoned that Attorney's intent and actions were solely meant "to inform the court of facts that [he] believed to be true based on the documentary evidence and the testimony of his client, which the Panel f[ound], by a preponderance of the evidence, [were] true for purposes of th[e] hearing." The Panel credited Attorney's candor with the court after Mr. Howard initially brought the conformed signature to the court's attention. Ultimately, the Panel dismissed the Board's Petition for Discipline entirely. The Board sought review of the dismissal in the Knox County Chancery Court.

*The Chancery Court Appeal*

After reviewing the transcript of evidence before the Panel and hearing arguments from counsel, the chancery court made findings of fact that, in large part, mirrored those of the Panel.[8] Ultimately, the chancery court held that the Panel abused its discretion and

---

[7] This Court takes note that the Petition for Discipline alleges a violation of RPC 8.4(c), not 8.4(b), and we will address this issue later in the opinion.

[8] Of note, the chancery court additionally found that "Mr. Harper testified he did not recall signing the . . . [L]etter or sending it," and that Mr. Harper was "99 [percent] certain he did not print, sign, or send the [L]etter." Further, the chancery court found that Attorney "wanted the [c]ourt to believe the draft [L]etter had been signed by Mr. Harper; therefore he added the "/s/ Ken Harper" to a copy of the "draft [L]etter" to persuade the court. (emphasis in original).

- 13 -

applied an incorrect legal standard. Additionally, the chancery court held that the Panel's conclusions were arbitrary and capricious and unsupported by the evidence as to each of the six rule violations alleged in the Board's petition.

First, the chancery court concluded that Attorney "knowingly altered a document" and that it was unreasonable for Attorney not to know that adding the conformed signature to the Letter constituted presenting or using false evidence. Because Attorney admitted he knew the Letter he received did not contain a signature, and because he admitted that he never saw the Letter signed by Mr. Harper himself, the chancery court reasoned that the Panel's conclusion that Attorney did not know the evidence to be false was unsupported by the evidence that was both substantial and material. Therefore, the chancery court reversed the Panel's dismissal of RPC 3.3(b) and (c).

The chancery court also concluded that the addition of "/s/ Kenneth Harper" could not be considered a conformed signature and the Panel's conclusion otherwise was arbitrary. Because Attorney attempted to add the signature of his client's adversary, the chancery court found that the Letter "could not be 'conformed,' particularly by someone without authority."[9] The chancery court concluded that the signature could not be considered a conformed signature at all because Attorney was not in possession of the signed copy of the original and did not have authorization from Mr. Harper to add the signature.[10] Therefore, the chancery court found that Attorney "assisted in the creation of a new document" with evidentiary value that was misleading to the court in violation of

---

[9] The chancery court specifically relied on Tennessee Code Annotated section 47-1-201(b)(41) that defines "unauthorized signature" as "a signature made without actual, implied, or apparent authority." These terms "actual, implied, and apparent authority" are most often associated with theories of agency, defined as "the fiduciary relation[,] which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control . . . ." Restatement (Second) of Agency § 1 (1958) (Oct. 2019 Update). In this case, the chancery court compares Attorney's authority to act on behalf of his own client versus Attorney's authority to act on behalf of his client's adversary. The chancery court found that Attorney could not act as an agent of Mr. Harper or under the guise of Mr. Harper's authority in signing his name to the Letter.

[10] The chancery court appears to rely on two things in reaching this conclusion. First, the court considered that "[t]he parties stipulated that a conformed signature indicates that there was a signed original." Second, the chancery court cites two cases for the proposition that "the validity of a conformed signature is determined by not only possession of the required signed original, but also the authorization of the conforming party to make the conformed copy or signature on the author's behalf." See Show Cause Order at 1–2, Command v. Bank of Am., No. 1:10-cv-1117 (W.D. Mich. Nov 9, 2012); In re Klitsch, 587 B.R. 287 (Bankr. M.D. Pa. 2018), opinion corrected, No. 5-17-BK-01298-JIT, 2018 WL 5733715 (Bankr. M.D. Pa. Oct. 31, 2018).

- 14 -

RPC 3.4(a) and (b), and concluded that the Panel's dismissal of the allegations in the Petition was an abuse of discretion and rested on a "clearly erroneous assessment of the evidence."

With regard to RPC 8.4(a), (b), and (c) specifically, the chancery court briefly addressed the Panel's error as to RPC 8.4(b):

> [T]he Panel wrote in its conclusions of law at Paragraphs 24-27, "the Board alleged a violation of RPC §8.4(b) but failed to present any evidence of a criminal act by Respondent". [sic]  This [c]ourt finds those conclusions to be erroneous.  The Board did not allege a violation of RPC §8.4(b), the Board alleged a violation of RPC §8.4(c), which this [c]ourt finds the conduct of the [Attorney] violated.

The chancery court explained that it was unclear whether Attorney would have addressed the conformed signature had Mr. Howard not alerted the trial court to the issue, and it was misleading for Attorney to present the conformed signature to the trial court as if there were, in fact, a signed copy.  The chancery court also held that it was erroneous for the Panel to conclude there was no violation of 8.4(a) because there was substantial and material evidence Attorney violated multiple rules.

The chancery court reversed the findings and recommendations of the Panel and concluded that Attorney violated RPC 3.3(b) and (c), 3.4(a) and (b), and 8.4(a) and (c), and imposed a public censure, pursuant to American Bar Association Standard 5.13.  Attorney filed a notice of appeal with this Court.

**Standard of Review**

The Supreme Court of Tennessee is responsible for promulgating and enforcing the rules that govern the legal profession as part of its duty to regulate the practice of law in this state.  Walwyn v. Bd. of Prof'l Responsibility, 481 S.W.3d 151, 162 (Tenn. 2015); Bd. of Prof'l Responsibility v. Cowan, 388 S.W.3d 264, 267 (Tenn. 2012).  The Board of Professional Responsibility is one source of authority that addresses and brings forth allegations against attorneys regarding ethical violations, and this Court is ultimately responsible for reviewing its recommendations for attorney discipline.  Brown v. Bd. of Prof'l Responsibility, 29 S.W.3d 445, 449 (Tenn. 2000).

Once the Board of Professional Responsibility initiates formal disciplinary proceedings against a lawyer, the rules of this Court require that he or she has the right to

an evidentiary hearing before a panel of three attorneys who determine the appropriate disciplinary action. Napolitano v. Bd. of Prof'l Responsibility, 535 S.W.3d 481, 495 (Tenn. 2017) (citing Walwyn, 481 S.W.3d at 162); see Tenn. Sup. Ct. R. 9, § 15.2(a)-(d) (2014). An attorney may appeal the decision of the hearing panel "to the circuit or chancery court[,] and then directly to this Court, where our review is upon the transcript of the record from the trial court, including the record of the evidence presented to the hearing panel." Walwyn, 481 S.W.3d at 162 (citation omitted); see Tenn. Sup. Ct. R. 9, § 33.1 (2014).

This Court and the circuit or chancery court apply the same standard of review on appeal. Napolitano, 535 S.W.3d at 496 (citing Long v. Bd. of Prof'l Responsibility, 435 S.W.3d 174, 178 (Tenn. 2014)). The reviewing court may affirm the hearing panel's decision or, in certain circumstances, "remand the case for further proceedings," but it may only reverse or modify a hearing panel's decision if:

> the rights of the party filing the Petition for Review have been prejudiced because the hearing panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the hearing panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn. Sup. Ct. R. 9, § 33.1(b). "Absent these limited circumstances, the hearing panel's decision should not be disturbed on appeal." Hancock v. Bd. of Prof'l Responsibility, 447 S.W.3d 844, 850 (Tenn. 2014) (citing Maddux v. Bd. of Prof'l Responsibility, 409 S.W.3d 613, 621–22 (Tenn. 2013)). Additionally, we may not "substitute [our] judgment for that of the hearing panel's as to the weight of the evidence on questions of fact." Napolitano, 535 S.W.3d at 496 (citing Long, 435 S.W.3d at 178). In this case, there are no issues involving constitutional or statutory provisions, jurisdiction, or procedure under the first three grounds for review. Therefore, we will focus our analysis on whether the hearing panel's conclusions were arbitrary and capricious under the fourth ground or unsupported by substantial and material evidence under the fifth ground in section 33.1(b).

"A decision is arbitrary if it 'disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion.'" Hancock, 447 S.W.3d at 855 (quoting City of Memphis v. Civil Serv. Comm'n, 216 S.W.3d 311, 315 (Tenn. 2007)). If a decision is not supported by substantial and material

evidence, this Court has held that the decision "qualifies as arbitrary and capricious." Bd. of Prof'l Responsibility v. Allison, 284 S.W.3d 316, 322 (Tenn. 2009). Evidence that is substantial and material requires "something less than a preponderance of the evidence . . . but more than a scintilla or glimmer." Id. at 322–23 (quoting Jones v. Bureau of TennCare, 94 S.W.3d 495, 501 (Tenn. Ct. App. 2002)). An abuse of discretion occurs when a Panel "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." Sallee v. Bd. of Prof'l Responsibility, 469 S.W.3d 18, 42 (Tenn. 2015) (alteration in original) (internal quotation marks omitted) (citing Eldridge v. Eldridge, 42 S.W.3d 82, 85 (Tenn. 2001)). We review Attorney's case with these principles in mind.

**Analysis**

Attorney argues three issues on appeal: (1) whether the Panel's decision to dismiss the Board's Petition for Discipline was arbitrary and capricious or unsupported by substantial and material evidence under the circumstances; (2) whether the chancery court abused its discretion and inappropriately substituted its judgment for that of the hearing panel when it overturned the hearing panel's findings and recommendations; and (3) if the chancery court was correct in overturning the hearing panel's decision, whether the sanction imposed was unduly harsh in light of the circumstances.

As to the second issue specifically, Attorney contends that the chancery court inappropriately substituted its judgment for that of the Panel on two important issues of fact: "whether [Attorney] knew the evidence to be false . . . and whether the conformed signature served as an annotation or an alteration of the document."

We will examine these issues as they apply to each of the six rule violations alleged in the Board's petition and the evidence and testimony presented regarding each one.

*RPC 3.3(b) and (c)*

RPC 3.3(b) and (c) states that an attorney is prohibited from offering, affirming the validity of, or using evidence the attorney "knows to be false." Tenn. Sup. Ct. R. 8, § 3.3(b)–(c) (2018). Attorney argues that the Panel's decision to dismiss these allegations was not arbitrary because there was substantial evidence to support that Attorney did not know the addition of the conformed signature, or what the conformed signature represented, to be false. The Board argues that the Panel made a "clearly erroneous" assessment of the evidence, and the undisputed facts show that Attorney knew the draft

- 17 -

of the Letter he received was unsigned, yet he added the signature of his client's adversary to the document to communicate that a signed original existed when he did not know that for a fact. While both parties agree that the facts are largely undisputed, we agree with Attorney that the Panel's decision was not arbitrary or capricious and was supported by substantial and material evidence.

Based on Mr. Huddleston's testimony, he told Attorney that Mr. Harper signed and sent the Letter, and the Panel received no evidence that Attorney had any reason to believe that his client's statements were false. In fact, the Board agreed that Attorney's addition of "/s/ Kenneth Harper" to the Letter was a conformed signature, something added by Attorney with the belief that the original was signed.

Additionally, the Panel found that Attorney was a credible witness who testified that he believed the Letter was signed. We hold that it was not arbitrary for the Panel to conclude that Attorney had a good faith belief that the Letter was signed. While we do not recommend that attorneys operate solely off the word of their clients to the point of blind ignorance, we do not believe that was the case here, or that the Panel's conclusion to dismiss RPC 3.3(b) and (c) lacked reason or was without a sound basis.

Despite the fact that Attorney received the Letter without a signature and added "/s/ Kenneth Harper" to the Letter, RPC 3.3(b) and (c) both require the Board to prove that Attorney knew the evidence he presented to the trial court to be false, and we believe that it was reasonable for the Panel to conclude the Board failed to meet that burden. As a result, we reverse the chancery court's decision as to RPC 3.3(b) and (c) and reinstate the Panel's dismissal of the allegations.

*RPC 3.4(a) and (b)*

Attorney argues that the Panel's conclusion that he did not obstruct the opposing party's access to the Letter was supported by substantial and material evidence. We agree. RPC 3.4(a) prohibits an attorney from "unlawfully obstruct[ing] another party's access to evidence or unlawfully alter[ing], destroy[ing], or conceal[ing] a document or other material having potential evidentiary value[,]" or assisting one's client in doing the same. Tenn. Sup. Ct. R. 8, § 3.4(a) (2018). At the hearing, Attorney testified that he turned over a copy of the Letter with and without the conformed signature to opposing counsel, and that was confirmed by Mr. Howard's testimony that he received both versions of the Letter. We hold that the Panel's decision to dismiss the allegation as to RPC 3.4(a) was not arbitrary and capricious. Therefore, we reverse the chancery court's decision to overturn the dismissal of the alleged violation of this rule.

Attorney also contends that it was not arbitrary for the Panel to find that the addition of the conformed signature was an annotation, not an unlawful alteration, and did not constitute falsifying evidence, in violation of RPC 3.4(b). See Tenn. Sup. Ct. R. 8, § 3.4(b) (2018) (stating that an attorney may not "falsify evidence, counsel or assist a witness to offer false or misleading testimony"). While this issue is not as clear cut, the evidence before the hearing panel shows that the parties agreed to the definition of "conformed signature" and that Attorney's addition of "/s/ Kenneth Harper" to the Letter was a conformed signature. The Board argues that by adding "/s/ Kenneth Harper" to the Letter, Attorney unlawfully altered the document because Attorney did not have implied or apparent authority to sign the document on behalf of his client's adversary. The Board also argues that Attorney created false evidence when he added the alteration and presented it to the trial court without explanation and as if it were a matter of fact that a signed original existed.

In this instance, we are not inclined to disturb the Panel's factual findings that "/s/ Kenneth Harper" was a conformed signature or that Attorney's use of the conformed signature was not unlawful and did not constitute falsifying evidence when these findings rest on an agreement between the parties.[11] While we and the chancery court might come to a different conclusion, our case law is clear that reviewing courts are strictly prohibited from substituting their judgment for that of the hearing panel's "as to the weight of the evidence on questions of fact." Napolitano, 535 S.W.3d at 496 (citing Long, 435 S.W.3d at 178). The Panel heard the Board's argument on this issue and did not find it persuasive.

Further, we conclude that it is not necessary for this Court to adopt a definition of "conformed signature." Likewise, we need not discuss issues of agency and authority to determine the pertinent issue in this instance, which is whether the Panel's conclusions were arbitrary. We are convinced that the facts of this case present a particular set of circumstances in which the Panel had a reasonable basis to conclude that "/s/ Kenneth Harper" was a notation in the form of a conformed signature, and because Attorney added the conformed signature with a good faith belief that there was a signed original, Attorney's addition did not constitute falsifying evidence.[12] Attorney testified that he did

---

[11] The Board argues that the Panel misinterpreted its "agreement" with regard to whether Attorney's actions were a conformed signature, but we are not persuaded by this argument.

[12] We emphasize that the facts of each case must be reviewed closely on these types of issues. Each case presents fact-specific issues.

not know the issue was disputed after turning over copies with and without the conformed signature and receiving no communication from Mr. Harper or his counsel that Mr. Harper disputed he authored, signed, or sent the Letter. Therefore, we hold that the Panel's decision to dismiss the allegations as to RPC 3.4(a) and (b) was supported by substantial and material evidence, and we reinstate the hearing panel's dismissal of these allegations.

*RPC 8.4(a) and (c)*

We first must start by addressing the Panel's judgment, and its conclusion as to RPC 8.4(b). We agree with the chancery court that it was error for the Panel to address RPC 8.4(b) because that rule violation was not alleged in the Board's petition or argued by the Board at any point.[13] The erroneous reference to section (b) appears to originate from one of Attorney's filings submitted to the Panel before the Panel issued its findings and recommendations.[14] As a result, there clearly can be no violation of RPC 8.4(b) by Attorney.

---

[13] Paragraphs 24–27 of the Panel's Conclusions of Law state:

> The Board alleges that [Attorney] has violated *RPC 8.4(b)*, which states that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects."

> All evidence in this matter is that [Attorney]'s intent in drafting Mr. Huddleston's affidavit; in applying the conformed signature to the exhibit to the affidavit; and in his argument to the court on May 9, 2016, was to inform the court of facts that [Attorney] believed to be true based upon the documentary evidence and the testimony of his client, and which this Panel finds, by a preponderance of the evidence, are true for purposes of this hearing.

> There is no evidence of any criminal act by [Attorney], and the Board has failed even to identify a criminal act by [Attorney].

> For these reasons, the Panel finds and concludes that the Board has failed to sustain its burden of proving, by a preponderance of the evidence, that [Attorney] violated RPC 8.4(b).

(emphasis added)

[14] As part of the proceedings before the Panel, each party submits "Proposed Findings of Fact and Conclusions of Law" to the Panel. In this case, the error in referring to RPC 8.4(b) appears in Attorney's

Next, we must address a more significant issue: the Panel's failure to make any findings or conclusion as to RPC 8.4(c). Inexplicably, the Panel's judgment is entirely devoid of references to RPC 8.4(c). Yet, the Board never called this omission to the attention of the Panel. Instead, the Board first addressed this issue on appeal to the chancery court: "The, [P]anel is confused and, and talks in its judgment about 8.4(b), which requires proving a criminal act. The Board did not allege, argue or attempt to prove a violation of 8.4(b). The hearing panel got (b) and (c) mixed up." The chancery court then addressed the issue in its final order:

> [T]he Panel wrote in its conclusions of law at Paragraphs 24–27, "the Board alleged a violation of RPC § 8.4(b) but failed to present any evidence of a criminal act by Respondent." This [c]ourt finds those conclusions to be erroneous. The Board did not allege a violation of RPC § 8.4(b), the Board alleged a violation of RPC § 8.4(c), which this [c]ourt finds the conduct of the [Attorney] violated.

Despite the Panel having made no mention of RPC 8.4(c) in its conclusions, the chancery court relied on evidence and testimony before the Panel to conclude that there was a violation of RPC 8.4(c) and that it was arbitrary for the Panel not to have done the same.

Neither the Board nor Attorney addressed our prior holding in Hancock v. Board of Professional Responsibility, 447 S.W.3d 844 (Tenn. 2014), and how the Court's precedent directs us on the issue of when a hearing panel fails to make a conclusion as to one of the alleged rule violations. In Hancock, the hearing panel failed to make specific conclusions regarding two alleged violations in connection with the attorney's "late-filed and noncompliant briefs in the district court." Id. at 855. The hearing panel made various factual findings that related directly to the allegations, but it failed to make conclusions of law based on those findings as to whether the attorney violated the two specific sections of the RPC. Id. at 855–56. On appeal, the chancery court stated,

> While the hearing panel found all the above facts to be true, as set forth in their findings . . . it failed to find [the attorney's] conduct violated any of the referenced Rules of Professional Conduct. This failure appears to have been an oversight and, in the opinion of the court, renders the decision of the hearing panel arbitrary with regard to these alleged violations in view of the factual determinations reached by the panel. *The court finds the decision arbitrary simply because the hearing panel failed to address the*

Proposed Findings of Fact and Conclusions of Law. The language in Attorney's filing appears almost verbatim in the Panel's Conclusions of Law.

*alleged violations.* The court has chosen to modify the decision of the hearing panel rather than remand the case to the hearing panel because, in the opinion of the court, the violations alleged would not justify the imposition of additional sanctions and this matter needs to be concluded.

Chancery Court Mem. at 17–18, Bd. of Prof'l Repsonsibility v. Hancock, No. 11-1797-IV (Davidson Cnty. Ch. Oct. 25, 2012) (emphasis added).

The decision was appealed to this Court, and this Court disagreed with the chancery court's conclusions "that the absence of findings render[ed] the hearing panel's decision arbitrary." Hancock, 447 S.W.3d at 855. The Hancock Court held that it was "unable to conclude that the hearing panel made any findings, inferences, conclusions or decisions," regarding the two alleged violations. Id. (alterations omitted). Therefore, this Court, along with any other reviewing court, was without authority "to amend, modify, or reverse the judgment of the hearing panel" because the appealing party, the Board, could not establish one of the necessary circumstances required by Tennessee Rule 9, section 1.3 (currently Rule 9, section 33.1(b)). Id. (citing Hyman v. Bd. of Prof'l Responsibility, 437 S.W.3d 435, 443–44 (Tenn. 2014)). The Hancock court explained that "without a specific finding [as to the rule violation], the chancery court could only speculate as to the hearing panel's intended conclusion. Consequently, the chancery court substituted its judgment for that of the hearing panel, which is expressly prohibited by Tennessee Supreme Court Rule 9, section 1.3." [15] Id. at 856.

As guidance for the Board, the Hancock court explained that due to the Board's burden of proof in disciplinary matters, it was Disciplinary Counsel's responsibility to address the failure to make a finding "before a petition for certiorari is filed and the hearing panel is without jurisdiction to modify its judgment." Id. at 857. The Board, for example, could have filed a motion to alter or amend the hearing panel's judgment. Id. The Hancock court concluded that "[d]ue to the limited standard of review on appeal, we [could] only construe the hearing panel's silence as a dismissal of the allegations of misconduct . . . ." Id.

Similar to the hearing panel in Hancock, in this case, the Panel did not mention RPC 8.4(c) in its findings of facts and failed to conclude whether Attorney violated RPC 8.4(c). Also like Hancock, the Board failed to raise this issue before the Panel. Without

---

[15] This opinion was authored in 2014, after the comprehensive changes to Tennessee Supreme Court Rule 9 occurred. However, the actions that gave rise to the allegations in Hancock occurred prior to the rule change, and the references to Rule 9 in the opinion are to the version in effect at the time of Mr. Hancock's hearing.

a conclusion as to the rule allegation, Hancock dictates that the chancery court was, and this Court is, unable to conclude that the Panel's decisions were arbitrary. Rather, both reviewing courts are without authority to amend, modify, or reverse the Panel's decision with regard to RPC 8.4(c). We must treat the Panel's silence as a dismissal of the allegations of RPC 8.4(c). Therefore, we hold that it was error for the chancery court to modify the Panel's judgment and conclude there was a violation of RPC 8.4(c).[16]

Lastly, the Panel "conclude[d] that [Attorney] ha[d] not violated any Rule of Professional Conduct," which led it to also conclude that the Board failed to prove that Attorney violated RPC 8.4(a). A violation of RPC 8.4(a) requires that an attorney "violate or attempt to violate the Rules of Professional Conduct, [or] knowingly assist or induce another to do so[.]" Tenn. Sup. Ct. R. 8, § 8.4(a) (2018). Based on our conclusions that allegations of all other rule violations must be dismissed, we also conclude that the Panel's dismissal of RPC 8.4(a) was supported by substantial and material evidence. Therefore, we reinstate the Panel's dismissal of this alleged violation.

## CONCLUSION

Based upon our careful consideration of the entire record, we reverse the decision of the chancery court overturning the hearing panel's conclusions as to RPC 3.3(b) and (c), 3.4(a) and (b), and 8.4(a), and we reinstate the hearing panel's dismissal of those allegations. In light of the hearing panel's failure to make a specific conclusion as to RPC 8.4(c), and this Court's precedent in Hancock, we also dismiss that rule violation. Accordingly, the Board's Petition of Discipline against Attorney is dismissed in its entirety. Costs are taxed to the Board.

_____
JEFFREY S. BIVINS, CHIEF JUSTICE

---

[16] We note that neither party called the Chancery Court's attention to Hancock.

- 23 -